**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARCE GONZALEZ, JR.**
Dyer, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTHONY RAY EWING, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1109-CR-447 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Ross Boswell, Judge
Cause No. 45G03-1007-FA-23

**July 12, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Anthony Ewing appeals his conviction for battery, as a Class C felony, following a jury trial. Ewing raises two issues on appeal:

1.      Whether the trial court abused its discretion when it sentenced him.

2.      Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

On the evening of July 11, 2010, Keith Daniels and Rosemary Moreno were at Daniels' residence in Hammond. Anthony Ewing, who had met Daniels one month prior at a soup kitchen, arrived unexpectedly at Daniels' residence later that night and brought beer and whiskey with him. Daniels let Ewing inside and Daniels, Ewing, and Moreno drank alcohol and listened to music.

Later, Daniels asked Ewing and Moreno to leave because he was tired and wanted to go to bed. When Daniels moved towards the front door, Ewing struck him on the head from behind, causing him to fall to the floor. Ewing continued to hit Daniels and said that Daniels had disrespected him. Daniels told Moreno to call the police, and Ewing walked over to Moreno and struck her, knocking her unconscious. Daniels got up from the floor, and he and Ewing began to fight. When Ewing demanded money from Daniels, Daniels told him that there was money located in his bedroom.

In the bedroom, Daniels told Ewing that he did not have any money. Ewing again struck Daniels, breaking his nose, and then began to choke Daniels. When Daniels said he would give Ewing the money, Ewing eased off of him. Daniels then grabbed a box

2

cutter from his dresser drawer and attempted to use it on Ewing, but Ewing disarmed him, and the box cutter fell to the floor. Daniels then said that he had money in the bathroom and went into the bathroom to stall for about one minute. When Daniels left the bathroom, he told Ewing that the money was in the dining room. Daniels then retrieved a knife and used it to threaten Ewing. Around the same time, Moreno ran out the back door. When Ewing heard the door shut, he lunged at Daniels. Daniels stabbed Ewing three times with the knife and also cut himself on his leg. As the two were scuffling, the knife broke. Ewing got up and ran out the back door. The police arrived shortly thereafter.

Daniels and Moreno were transported to the hospital in an ambulance. Daniels' injuries included a cut under his eye, a broken nose, a broken thumb, contusions on his face and shoulder, and a laceration on his leg. Both the cut under Daniels' eye and the cut on his lip required stitches. The laceration on Daniels' leg required staples.

On July 22, 2010, the State charged Ewing with two counts of attempted robbery, as Class A felonies; two counts of robbery, as Class B felonies; two counts of criminal confinement, as Class B felonies; and two counts of battery, as Class C felonies. On July 7, 2011, the jury found Ewing guilty of one count of battery, as a Class C felony, and acquitted him on the remaining counts.

At the sentencing hearing, Daniels told the trial court that he suffers from sinus problems as a result of his broken nose and that he has a scar under his left eye from the cut he sustained during the incident. The trial court sentenced Ewing to the advisory sentence of four years, to be served in the Indiana Department of Correction, with 366

days of credit for time served and 366 days good time credit for a total of 732 days credit.

When sentencing Ewing, the trial court considered as mitigating circumstances the facts that Ewing had lived a sober life for fifteen years and that he worked to support his family. As an aggravating circumstance, the trial court considered the extent of the injury to the victim. Ewing now appeals.

## DISCUSSION AND DECISION

### Issue One: Abuse of Discretion

Ewing first contends that the trial court abused its discretion when it sentenced him to the advisory sentence of four years' imprisonment. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on other grounds on reh'g, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. Id.

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law . . . .
>
> [However, b]ecause the trial court no longer has any obligation to "weigh" aggravating and mitigating factors against each other when imposing a sentence, . . . a trial court can not now be said to have abused its discretion in failing to "properly weigh" such factors.

Id. at 490-91.

4

Specifically, Ewing asserts that the aggravating circumstance used by the trial court for sentencing, the extent of Daniels' injuries, is not supported by the record. Under Indiana Code Section 35-38-1-7.1-1(a)(1), to be considered an aggravating circumstance, the harm, injury, or loss suffered by the victim must be significant and greater than the elements necessary to prove commission of the offense. To find Ewing guilty of Class C felony battery, the State had to show that the battery resulted in "serious bodily injury" to Daniels. Ind. Code § 35-42-2-1(a)(3). "Serious bodily injury" is defined as an injury that creates a substantial risk of death or causes serious permanent disfigurement, unconsciousness, extreme pain, permanent or protracted loss or impairment of the function of a bodily member or organ, or loss of a fetus. Ind. Code § 35-41-1-25.

Here, Daniels testified that when Ewing broke his nose "it hurted bad [sic]." Transcript at 75. Daniels' statement is sufficient evidence of "serious bodily injury" for purposes of a Class C felony battery conviction under Indiana Code Section 35-42-2-1(a)(3). See Ind. Code § 35-42-2-1(a)(3). To be considered an aggravator, the extent of the injury needs only to be greater than that required to prove the element of "serious bodily injury" for the Class C felony battery conviction. Ind. Code § 35-38-1-7.1-1(a)(1). The record shows that, beyond a broken nose, the extent of Daniels' injuries included a broken thumb, a cut under his eye that required stitches and resulted in a scar, a cut on his lip that required stitches, a laceration to his leg that required staples, contusions on his face and shoulder, and sinus problems resulting from his broken nose. Therefore, the

trial court did not abuse its discretion when it found the extent of Daniels' injuries to be greater than that necessary to prove the battery allegation.

## Issue Two: Appellate Rule 7(B)

Ewing next contends that his sentence is inappropriate in light of the nature of the offense and his character. Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution "authorize[] independent appellate review and revision of a sentence imposed by the trial court." Roush v. State, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). Id. Revision of a sentence under Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offense and his character. See Ind. Appellate Rule 7(B); Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. Gibson v. State, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." Roush, 875 N.E.2d at 812 (alteration original).

Moreover, "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. The principal

role of appellate review is to attempt to "leaven the outliers." Id. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." Id. at 1224.

Ewing requests this court to revise his sentence to three years or to suspend a portion of his four-year sentence and place him on probation for the suspended term. Because the "advisory sentence is the starting point our General Assembly has selected as an appropriate sentence for the crime committed, the defendant bears a particularly heavy burden in persuading us that his sentence is inappropriate when the trial court imposes the advisory sentence." Fernbach v. State, 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011) (citing Golden v. State, 862 N.E.2d 1212, 1216 (Ind. Ct. App. 2007), trans. denied), trans. denied.

Regarding the nature of the offense, Ewing arrived unexpectedly at Daniels' home and, when he was asked to leave, attacked Daniels from behind. Ewing then continued to fight Daniels, demanding money several times, and ultimately caused Daniels to suffer a broken nose, a broken thumb, a cut under his eye that required stitches and resulted in a scar, a cut to his lip that required stitches, a laceration to his leg that required staples, multiple contusions on his face and shoulder, as well as continuing sinus issues stemming from his broken nose. Despite Ewing's contentions that his conduct was not "overly violent" and that he did not cause serious injury to the victim, we cannot say that the advisory sentence is inappropriate in light of the nature of Ewing's offense. Appellant's Br. at 6.

Neither is the advisory sentence inappropriate in light of Ewing's character. At the sentencing hearing, the trial court found, as a mitigating factor, that Ewing had lived a sober life for fifteen years and supported his family. Nevertheless, Ewing's criminal history includes multiple felony convictions, including two convictions for possession of a controlled substance and one for attempted murder.

We hold that, under these facts and circumstances, the four-year advisory sentence is not inappropriate.

Affirmed.

RILEY, J., and DARDEN, J., concur.