**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Sep 11 2012, 9:08 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**L. ROSS ROWLAND**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT A. LESURE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A02-1202-CR-87 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Linda Ralu Wolfe, Judge
Cause No. 18C03-1107-FB-19

**September 11, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Robert Lesure appeals his convictions and sentence for robbery, as a Class B felony, and intimidation, as a Class C felony, following a jury trial. Lesure presents the following issues for our review:

1. Whether the trial court committed fundamental error when it admitted into evidence certain testimony.

2. Whether the State presented sufficient evidence to support his convictions.

3. Whether his sentence is inappropriate in light of the nature of the offenses and his character.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On July 23, 2011, Lesure, whose nickname is "Country," was with friends Conner Murphy, Constance Vance, Carl Ridenour, and Ciji Bennett at the Joker's Wild strip club in Delaware County. The group arrived at the club in a silver Oldsmobile Alero owned by Bennett. Tyler Dearduff had just parked his truck in the parking lot of the Joker's Wild when a man later identified as Lesure approached him and asked him for a cigarette. After Dearduff retrieved a cigarette to give to Lesure, he turned to find Lesure pointing a silver pistol at Dearduff's head. Lesure then stole Dearduff's wallet and cell phone. And Lesure told Dearduff that if he recorded his license plate number or called police, Lesure would kill him and his family.

Lesure returned to the Alero, where Vance was sitting in the driver's seat and Ridenour was sitting in the front passenger seat. When Lesure got into the car, Ridenour saw that Lesure had a silver gun and a wallet, and Vance saw Lesure throw the wallet

2

into Ridenour's lap. Murphy and Bennett were walking through the parking lot toward the car when Lesure told Vance to drive away. Lesure told Vance that they would return to get Murphy and Bennett later.

Dearduff saw Lesure leaving the parking lot in the Alero, and he tried to follow the car in his truck, but he was unsuccessful in finding the Alero after it left the parking lot. Dearduff then drove to his father's house, but his mother was not home and had the only cell phone with her. So Dearduff and his father drove to a nearby business and asked the employees to contact the police, which they did. While they were waiting for an officer to respond, Dearduff and his father "flagged" down a passing police officer and reported the robbery. Transcript at 101.

Dearduff, who was twenty years old at the time, lied to police about the location of the robbery because he was afraid he would be in trouble for going to a bar. But he described his assailant as a black male with tattoos on his arms and wearing red basketball shorts, a white tank top, and house slippers. And Dearduff told police that Lesure had left the scene in a four-door silver Alero.

In the meantime, Muncie Police Officer Amoreena Kesler, who was patrolling in her marked police car, observed the driver of a passing car exhibiting suspicious behavior. Officer Kesler also observed that the car's license plate light was not illuminated, and she pursued the car in an effort to execute a traffic stop. But the driver sped away, and Officer Kesler had difficulty catching up to the car. When Officer Kesler finally got close enough to the car and turned on her patrol car's lights and siren, the car still did not stop. After traveling some distance further, the car finally stopped, and a

black male wearing red basketball shorts and a white tank top exited and ran from the scene. Officer Kesler saw two individuals inside the car, and, as she approached to talk to them, the driver of the car drove away. Officer Kesler returned to her patrol car and pursued the car at high speed. Officer Kesler lost sight of the car at one point, but soon found it rolling in the street and unoccupied. Onlookers told Officer Kesler that they had seen the car's occupants "run in certain directions." Id. at 139. But Officer Kesler was unable to track down any of the car's occupants on foot.

Inside the car, Officer Kesler and another responding officer found "several items of identification belonging to several different persons[.]" Id. In particular, Officer Kesler found identification cards belonging to Ridenour, Murphy, and Dearduff. Officer Kesler also found an empty gun holster in the car.

At some point, Officer Tyler Swain escorted Dearduff to the location of the abandoned car, again, a silver four-door Alero, that Officer Kesler had found. Dearduff identified his wallet lying on the floor of the interior of the car. Dearduff's driver's license, social security card, birth certificate, two ATM cards, and other personal items that had been inside his wallet were also recovered, but the money that had been in his wallet was missing.

Thereafter, Officer Kesler was taking inventory of the car's contents when a cell phone she had found in the car began to ring. Officer Kesler answered the phone, which identified the caller as "Country," and a man's voice said, "Why didn't you mother fuckers get out [of] the car?" Id. at 153. Officer Kesler asked the caller for his location, and he responded, "I'm at the liquor store. Come pick me up." Id. Officer Kesler knew

4

that a liquor store was located in the vicinity where the black male had run from the car at the initial traffic stop, so she radioed for "any available unit" to go to that liquor store to look for the suspect. Id. at 154.

When Officer Kesler arrived at the liquor store, other officers were talking to a black male who was wearing only pants and socks. Officers finally brought Dearduff to the scene, but Dearduff stated that he did not recognize the man as the man who had robbed him.

In the meantime, Dorothy Bennett, Ciji Bennett's aunt, had picked up Bennett and Murphy from a gas station near the Joker's Wild. And later, Dorothy drove Bennett to Bennett's apartment. Once there, Bennett discovered Lesure in a closet with a gun. Dorothy also saw Lesure with the gun, and Lesure told Dorothy that he and Ridenour had "robbed someone" and that he was leaving town. Id. at 204. Dorothy told Lesure that she was going to call the police. Dorothy then left the apartment, went home, and called the police. Shortly thereafter, police arrived at Bennett's apartment and arrested Lesure. In subsequent interviews with a detective, Vance stated that Lesure was wearing red basketball shorts and a white shirt during the robbery. Both Vance and Ridenour admitted that they were present when a robbery occurred in the parking lot of the Joker's Wild. And Vance stated that Lesure had been carrying a silver handgun in a black holster earlier on the day of the robbery.

The State charged Lesure with robbery, as a Class B felony; conspiracy to commit robbery, as a Class B felony; and intimidation, as a Class C felony. A jury found him guilty of robbery and intimidation, but acquitted him of conspiracy to commit robbery.

The trial court entered judgment accordingly and sentenced Lesure to twelve years, with two years suspended, on the robbery conviction and seven years on the intimidation conviction, to be served concurrently, for an aggregate sentence of twelve years with two years suspended. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Fundamental Error

Lesure first contends that the trial court committed fundamental error when it permitted Officer Kesler to testify regarding what Lesure said when she answered the cell phone she had found in Bennett's car. Lesure alleges fundamental error because he did not object to that testimony, which he alleges was hearsay, at trial.[1] A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the appellate court determines that a fundamental error occurred. Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010) (citations omitted). The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." Id. (citing Mathews v. State, 849 N.E.2d 578, 587 (Ind. 2006)). The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." Id. (citing Clark v. State, 915 N.E.2d 126, 131 (Ind. 2009)). This exception is available only in "egregious circumstances." Id. (citation omitted).

---

[1] Lesure did object when Officer Kesler began to testify regarding her conversation with the person on the cell phone, but after the State laid a foundation for her testimony, Lesure withdrew his objection.

6

The State contends, and we agree, that Lesure has waived this issue for failure to make cogent argument. See Ind. Appellate Rule 46(A)(8)(a). Waiver notwithstanding, Lesure has not demonstrated that the trial court committed error, let alone fundamental error, when it permitted the testimony. Officer Kesler testified that, when she answered the cell phone, the display on the phone identified the caller as "Country," which is Lesure's nickname. In addition, Officer Kesler testified that she recognized the caller's voice as Lesure's voice, which is distinctive. Because the testimony was Lesure's own statement used against him at trial, it was not hearsay and there was no error in its admission. See Ind. Evidence Rule 801(d)(2).

## Issue Two: Sufficiency of the Evidence

Lesure next contends that the State presented insufficient evidence to support his convictions. When the sufficiency of the evidence to support a conviction is challenged, we neither reweigh the evidence nor judge the credibility of the witnesses, and we affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Wright v. State, 828 N.E.2d 904, 905-06 (Ind. 2005). It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling. Id. at 906.

Again, Lesure has waived this issue for failure to make cogent argument. Waiver notwithstanding, Lesure's sole contention is that the State did not prove that he was the man who robbed and threatened Dearduff. But Lesure's argument amounts to nothing

7

more than a request that we reweigh the evidence, which we will not do. Despite the fact that Dearduff did not identify Lesure as his assailant immediately after the robbery, Dearduff made a positive identification of Lesure at trial, and there is ample circumstantial evidence implicating Lesure in the robbery in addition to Dearduff's testimony. For instance, Dearduff testified that the man who robbed and threatened him was wearing a white tank top and red basketball shorts, and the State presented testimony that that was the clothing Lesure was wearing when he was in the parking lot of Joker's Wild the night of the robbery. Witnesses testified that when Lesure got into the silver Alero and instructed Vance to drive away, he had a wallet and a gun, and Dearduff's wallet and its contents, including his driver's license, ATM cards, social security card, and birth certificate, were subsequently found in the car. Finally, Dorothy Bennett testified that during the early morning hours of July 24, 2011, Lesure admitted to having robbed someone, and he was hiding in Ciji Bennett's house with a gun. The State presented sufficient evidence to support Lesure's convictions for robbery and intimidation.

**Issue Three: Sentence**

Finally, Lesure contends that his sentence is inappropriate in light of the nature of the offenses and his character. Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution "authorize [ ] independent appellate review and revision of a sentence imposed by the trial court." Roush v. State, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate

8

Rule 7(B). Id. Revision of a sentence under Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character. See App. R. 7(B); Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. Gibson v. State, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." Roush, 875 N.E.2d at 812 (alteration original).

The Indiana Supreme Court more recently stated that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. The principal role of appellate review is to attempt to "leaven the outliers." Id. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." Id. at 1224.

The advisory sentence for a Class B felony is ten years, with a minimum sentence of six years and a potential maximum sentence of twenty years. Ind. Code § 35-50-2-5. The advisory sentence for a Class C felony is four years, with a minimum sentence of two years and a potential maximum sentence of eight years. Ind. Code § 35-50-2-6.

9

Here, the trial court imposed concurrent sentences of twelve years and seven years, and the aggregate term is twelve years with two years suspended.

Once again, Lesure fails to make cogent argument in support of his contention on this issue. While he does cite to relevant case law, he makes no attempt to analyze the case law with respect to the particulars of the trial court's sentencing statement. Instead, he merely provides a list of bullet points containing "circumstances" that "should be considered" in reviewing his sentence. Brief of Appellant at 15.

Waiver notwithstanding, we consider the merits of Lesure's contentions. In particular, with regard to the nature of the offenses, Lesure points out that no one was injured.[2] Be that as it may, Lesure pointed a gun at Dearduff's head and threatened to kill him and his family if he contacted the police following the robbery. In addition, because of Lesure's conduct, Vance ended up leading police in a high-speed chase, which has inherent dangers to the police and the public. We cannot say that Lesure's sentence is inappropriate in light of the nature of the offenses.

Next, in support of his character, Lesure points out that he: "was employed and providing for his nine children;" "drove to Indianapolis every two days to check on the disabled mother of five of his children;" has earned his GED; admitted to needing help with his substance abuse problems; and "has family support." Brief of Appellant at 15. Lesure does not cite the record to support any of those assertions on appeal. Regardless, as the State points out, Lesure has a significant criminal history, including two felony convictions and two misdemeanor convictions, and he violated the terms of his probation

_____

[2] As for the other four bullet points that Lesure apparently finds relevant to this issue, we find none of them relevant and do not address them.

following a recent Class C felony conviction. We cannot say that Lesure's sentence is inappropriate in light of his character.

Affirmed.

KIRSCH, J., and MAY, J., concur.