Christina ROUSH, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 75A03–0701–CR–44.

Court of Appeals of Indiana.

Nov. 9, 2007.

Benjamen W. Murphy, Murphy Yoder Law Firm, P.C., Merrillville, IN, Walter J. Alvarez, Crown Point, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Christina Roush appeals her conviction and sentence for Obstruction of Justice, a Class D felony, following a jury trial. Roush raises four issues for our review, which we restate as follows:

1. Whether the trial court abused its discretion in permitting the State to amend the charging information after the omnibus date.

2. Whether the court erred in admitting into evidence out-of-court statements from Roush's alleged co-conspirators.

3. Whether the State presented sufficient evidence to support her conviction.

4. Whether the court abused its discretion in ordering Roush to serve the presumptive sentence for her conviction.

5. Whether the presumptive sentence is inappropriate in light of the nature of Roush's offense and her character.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In *Rowe v. State*, 867 N.E.2d 262, 265 (Ind.Ct.App.2007), we set out the underlying facts relevant to this appeal as follows:

On January 23, 2005, [Bobbie] Rowe drove an ATV towing a sled in which three children were riding: Rowe's daughter, Charity Minix, and two minor girls, C.C. and J.C. Rowe initially drove the children around her backyard, but then she drove out onto an adjacent roadway to travel to a friend's house. Rowe knew it was illegal to operate an ATV on the roadway. It was dark outside, so Rowe illuminated the headlight on the ATV.

When Rowe saw an approaching vehicle, she slowed the ATV and came to a stop near the edge of the roadway. That action caused the sled to move into the path of the approaching vehicle, which was being operated by Lester Hensley. Hensley did not see the sled in time to avoid striking it. As a result of the collision, C.C. and J.C. died instantly, and Charity was treated for serious bodily injuries.

Police officers and emergency medical personnel arrived at the scene, and Starke County Deputy Sheriff Brett Hansen told Rowe that she could ride in the ambulance to the hospital with her daughter. Deputy Hansen also told Rowe that she would have to submit to blood and urine tests at the hospital, and

Rowe agreed. But Rowe did not ride in the ambulance to the hospital. Instead, she drove the ATV from the accident scene to her house and telephoned her sister, Patricia Minix, to ask her to give her a urine sample. Rowe did not want to give her own urine sample because she had smoked marijuana within a "couple" of days of the accident. Minix agreed, and Rowe got Minix's urine sample before driving herself to the hospital.

Rowe also telephoned her friend Christina Roush, a laboratory technician at Starke Memorial Hospital who was not working that evening. Roush met Rowe at the hospital and arranged to take Rowe's urine and blood samples. Rowe had returned Minix's urine sample to her, and Minix had poured that sample down a bathroom sink. Ultimately, however, Roush collected a new urine sample from Minix to submit as Rowe's urine, but Rowe submitted her own blood for the blood test. The results of the blood test showed the presence of carboxy-THC, a metabolite of marijuana, in Rowe's blood. The significance of that result is that Rowe had ingested or was exposed to marijuana at some time during the previous week.

(Citations to the record omitted.) A jury then convicted Rowe on multiple counts, including obstruction of justice, and this court affirmed her convictions and sentence on appeal.

Subsequent lab tests on Rowe's blood and urine samples showed that the urine samples were from Minix. The State thereafter arrested Minix, and she pleaded guilty to obstruction of justice. The State also arrested Roush and, on April 7, 2005, charged her with obstruction of justice, a Class D felony, and Assisting a Criminal, as a Class D felony. Specifically, the State's charging information alleged as fol-

lows on the obstruction of justice charge: "On or about January 23, 2005[,] at Starke Memorial Hospital in Starke County, State of Indiana, Christina Roush did alter a record, to-wit: identification label on a urine sample with the intent to prevent said item from being used as evidence in an official investigation." Appellant's App. at 15. The trial court set the omnibus date for May 24, 2005.

In April of 2006, Roush was tried before a jury. But on April 12, the court declared a mistrial after the jury was unable to reach a verdict. Thereafter, on May 23, 2006, almost one year after the omnibus date, the State moved to amend the charging information. The State's amended information on the obstruction of justice charge read as follows:

> On or about January 23, 2005[,] at Starke Memorial Hospital in Starke County, State of Indiana, Christina Roush did make a false record, to-wit: label a urine sample and chain of custody forms with the name of Bobbie Rowe knowing that said urine sample did not come from Bobbie Rowe and that the Defendant did so with the intent to prevent Bobbie Rowe's urine sample from being used as evidence in an official investigation.

*Id.* at 39.

The trial court held a hearing on the State's motion, at which time Roush objected to the State's motion and requested a continuance. The court overruled Roush's objection and permitted the amendments, stating in relevant part as follows:

> (10) At the first trial, the Defendant testified that she did place that identification label on the container that contained a urine sample, but that she did not know that the urine in the container did not come

from the individual whose name appeared on the identification label.

> (11) In other words, at the first trial, the parties' evidence was the same regarding the physical actions of the Defendant with respect to the identification label placed on the container. However, the parties presented conflicting evidence of the Defendant's intent.

> (12) The proposed amendment [to the obstruction of justice charge] addresses the nature of Defendant's physical actions, specifically a request to change the allegation from "altering a record," to "making a false record." The proposed change does not address the intent, or knowledge, of the Defendant.

> (13) At the hearing on the motion to amend, the Defendant made no representation that she anticipated the evidence in the second trial to be any different that [sic] the evidence in the first trial on the issue of the Defendant's physical conduct regarding the identification label that the Defendant applied to the container of urine.

*Id.* at 44.

At the retrial, Roush testified that she and Rowe were alone in the laboratory in which the blood and urine samples were collected. Minix and two other witnesses, Sherry Jachim and Connie Miller, both Rowe's cousins, testified that Minix accompanied Roush and Rowe into that laboratory. Minix further testified that Roush collected Minix's urine sample in place of Rowe's. Roush conceded that she affixed a label to the collected urine and that she filled out, signed, and dated the relevant forms associated with that urine.

The jury found Roush guilty as charged. On January 2, 2007, the court declined to enter a judgment of conviction against

Roush for assisting a criminal, as a Class D felony,[1] but the court entered judgment on her conviction for obstruction of justice, a Class D felony. The court then sentenced Roush to eighteen months in the Department of Correction. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Amendment to the Charging Information

■ Roush first argues that the trial court erred in permitting the State to amend the charging information after the omnibus date on the obstruction of justice charge. Amendments to a charging information are governed by Indiana Code Section 35–34–1–5,[2] which provides in relevant part:

> (a) An indictment or information which charges the commission of an offense may not be dismissed but may be amended on motion by the prosecuting attorney at any time because of any immaterial defect, including:
>
> * * *
>
> (9) any other defect which does not prejudice the substantial rights of the defendant.
>
> (b) The indictment or information may be amended in matters of substance or form, and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant, at any time up to:

> (1) thirty (30) days if the defendant is charged with a felony; or
>
> (2) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors;
>
> before the omnibus date....
>
> (c) Upon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant.

Our Supreme Court recently discussed the amendment of charging instruments in *Fajardo v. State*, 859 N.E.2d 1201 (Ind. 2007). After reviewing the statute and its history, the *Fajardo* court held:

> [T]he first step in evaluating the permissibility of amending an indictment or information is to determine whether the amendment is addressed to a matter of substance or one of form or immaterial defect. As noted above, an amendment is one of form, not substance, if both (a) a defense under the original information would be equally available after the amendment, and (b) the accused's evidence would apply equally to the information in either form. And an amendment is one of substance *only* if it is essential to making a valid charge of the crime.

859 N.E.2d at 1207 (emphasis added). After determining the type of amendment sought, the trial court must apply the ap-

---

**1.** Because the trial court did not enter a judgment on Roush's conviction for assisting a criminal, we need not address whether any of the issues raised on appeal apply to that charge.

**2.** The General Assembly amended Indiana Code Section 35–34–1–5 effective May 8, 2007. *See* P.L. 178–2007, § 1 (Senate Enrolled Act No. 45). That amendment elimi-

nates references to matters of form in subsection (b), in response to an inconsistency noted by our Supreme Court. *See Fajardo v. State*, 859 N.E.2d 1201, 1205 (Ind.2007). However, because the alleged offense here occurred before the legislature amended the statute, our review is based on the old statute. We note, however, that we would reach an identical holding under the amended statute.

propriate subsection of the statute: subsection (a) for immaterial defects, subsection (b) for matters of substance, and subsection (c) for matters of form. *See Baber v. State*, 870 N.E.2d 486, 491–92 (Ind.Ct.App.2007), *trans. pending.*

Here, the State's original charging information alleged, in relevant part, that "Roush did alter a record, to-wit: identification label on a urine sample with the intent to prevent said item from being used as evidence in an official investigation." Appellant's App. at 15. And the State's amended information stated:

> Roush did make a false record, to-wit: label a urine sample and chain of custody forms with the name of Bobbie Rowe knowing that said urine sample did not come from Bobbie Rowe and that the Defendant did so with the intent to prevent Bobbie Rowe's urine sample from being used as evidence in an official investigation.

*Id.* at 39. On appeal, Roush contends that the amendment was a matter of substance. We cannot agree.

The State's amendment to the charging information neither satisfied the prerequisite definition for an amendment of substance nor prejudiced the defendant's substantial rights. The original charging information tracked the language of Indiana Code Section 35–44–3–4(a)(3),[3] whereas the amended information tracked the language of Indiana Code Section 35–44–3–4(a)(4).[4] Either formulation presented a valid Class D felony obstruction of justice charge; thus, the State's amendment could not be one of substance.

*See Fajardo*, 859 N.E.2d at 1207. Further, Roush's substantial rights were not prejudiced by the amendment because, under either version of the information, Roush's evidence and defense that she lacked the intent necessary for the alleged crime were equally available. *See, e.g., Sharp v. State*, 534 N.E.2d 708, 714 (Ind.1989) ("[Appellant-defendant] has not shown that he was misled or that a viable defense became unavailable after the information was amended. We find appellant has not demonstrated substantial prejudice from the amendment.").

Nonetheless, Roush argues that the amended charging information was impermissible for three reasons. First, Roush argues that the amendment was barred by Indiana Code Section 35–34–1–5(b) because the State "intended to call an additional witness at the second trial." Appellee's Brief at 20. But, again, Section 35–34–1–5(b) only "prohibits any amendment as to matters of substance." *Fajardo*, 859 N.E.2d at 1207; *Baber*, 870 N.E.2d at 491–92. As the amendment here was in form and not of substance, Roush's argument on this point must fail.

Roush next asserts that the State's amendment is analogous to the amendments made in *Fajardo*, which our Supreme Court held to be of substance. In *Fajardo*, the State added a new charge in the amended charging information. *See id.* at 1207–08. That did not happen here. As such, the facts of *Fajardo* are inapposite.

Finally, Roush argues that each version of the charging information related to a

---

**3.** Subsection (a)(3) states that a person who "alters, damages, or removes any record, document, or thing, with intent to prevent it from being produced or used as evidence in any official proceeding or investigation" commits obstruction of justice.

**4.** Subsection (a)(4) states that a person who "makes, presents, or uses a false record, document, or thing with intent that the record, document, or thing, *material to the point in question*, appear in evidence in an official proceeding or investigation to mislead a public servant" commits obstruction of justice.

different pattern jury instruction, and therefore the amendment was one of substance. But Roush presents neither cogent reasoning nor citation to authority in support of that position. Hence, that argument is waived. *See* Ind. Appellate Rule 46(A)(8)(a). Because the State's amendment was not essential to a valid charge of the crime and because the amendment did not prejudice Roush's substantial rights, the trial court did not err in permitting the State to amend the charging information after the omnibus date.

**Issue Two: Admission of Evidence**

■ Roush next alleges that the trial court abused its discretion in admitting into evidence four out-of-court statements made by Rowe and Minix over her objections. Our standard of review of a trial court's findings as to the admissibility of evidence is an abuse of discretion. *Ground v. State,* 702 N.E.2d 728, 730 (Ind. Ct.App.1998). An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Rolland v. State,* 851 N.E.2d 1042, 1045 (Ind.Ct. App.2006).

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). But a statement is not hearsay if the statement is one "by a co-conspirator of a party during the course and in furtherance of the conspiracy." Evid. R. 801(d)(2)(E). For a statement to be admissible under Rule 801(d)(2)(E), the State must prove that there is "independent evidence" of the conspiracy. *Lott v. State,* 690 N.E.2d 204, 209 (Ind.1997). This means that the State must show, by a preponderance of the evidence, (1) the existence of a conspiracy between the declarant and the party against whom the statement is offered and (2) that the statement was made in the course and in furtherance of the conspira-

cy. *Barber v. State,* 715 N.E.2d 848, 852 (Ind.1999) (citing *Wright v. State,* 690 N.E.2d 1098, 1105 (Ind.1997)).

Here, Roush argues that four statements introduced into evidence were neither proven by independent evidence of a conspiracy nor made in the course and in furtherance of a conspiracy. Specifically, Roush appeals from the admission of the following statements: (1) Miller and Jachim each testified that they heard Rowe say she was "f----d" if she had to take a drug test following the accident, and that Rowe stated she "need[ed] to get a hold of Chrissy," transcript at 342, 371; (2) Jachim testified that, shortly thereafter, she overheard Minix state "this conversation goes no farther," *id.* at 347; (3) Minix testified that, after she provided Rowe with the original urine sample, Rowe stated that "she was going to be all right ... [if] Chris[s]y[ ] would be at the hospital," *id.* at 269; and (4) Miller testified that Rowe told her "everything is okay. I got a hold of Chrissy. Patty is going to pee for me.... [E]verything is taken care of," *id.* at 373.

■ The State proved, by a preponderance of independent evidence, the existence of a conspiracy between Roush, Rowe, and Minix. To prove a conspiracy, the State needed to show an intent to commit a felony, an agreement with another person to commit the felony, and an overt act in furtherance of that agreement. *See Francis v. State,* 758 N.E.2d 528, 533 (Ind.2001) (citing I.C. § 35–41–5–2(a), (b)). As the trial court here noted, the following independent evidence demonstrated that Roush, Rowe, and Minix were engaged in a conspiracy to commit obstruction of justice: a DNA test on the urine sample labeled as Rowe's demonstrated that the urine was not Rowe's; Deputy Hansen testified that Roush was supposed to collect Rowe's urine, and that Roush filled

out the accompanying forms for that sample; Miller and Jachim each witnessed Roush, Rowe, and Minix conversing at the hospital; and Roush was not scheduled to work at the hospital that evening but came to work anyway. That was ample evidence from which the court could conclude a conspiracy existed between Roush, Rowe, and Minix.

 Roush also argues that the four statements were not made in the course and in furtherance of the conspiracy. A statement is made in the course of a conspiracy when it is "made between the beginning and ending of the conspiracy."[5] *Houser v. State*, 661 N.E.2d 1213, 1219 (Ind.Ct.App.1996), *trans. denied.* And a statement is in furtherance of a conspiracy when the statement is "designed to promote or facilitate achievement of the goals of the ongoing conspiracy." *Leslie v. State*, 670 N.E.2d 898, 901 (Ind.Ct.App. 1996) (quoting *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir.1993)), *trans. denied.* "Mere 'idle chatter' does not satisfy the in-furtherance requirement." *Id.* (quoting *Tracy*, 12 F.3d at 1196).

Regarding the first challenged statement, Roush baldly asserts that it was "not in furtherance of any conspiracy and [was] mere chatter." Roush's argument is neither supported by cogent reasoning nor citation to authority. As such, it is waived. *See* App. R. 46(A)(8)(a). And with regard to the fourth challenged statement, Roush contends only that that statement was not supported by independent evidence of a conspiracy. But as discussed above, the State properly demonstrated the existence of a conspiracy by a preponderance of independent evidence.

As for the remaining two statements, they were each made in the course and in furtherance of the conspiracy. The trial court admitted the second statement, Jachim's testimony that she heard Minix say "this conversation goes no farther," transcript at 347, because the court interpreted that statement to be "an attempt to persuade others not to disclose information or that conversation," *id.* at 346. We cannot say that the trial court abused its discretion in admitting that testimony.

And we are likewise not persuaded by Roush's argument that the third statement was not made in the course of the conspiracy. In that statement, Rowe stated, after Minix provided Rowe with the original urine sample, that "she was going to be all right ... [if] Chris[s]y[ ] would be at the hospital." *Id.* at 269. Because Minix had provided Rowe with a urine sample before Rowe made that statement, Roush asserts on appeal that "the fruits of the conspiracy had been completed" before the statement was made. Appellant's Brief at 29. But Roush ignores the fact that that urine sample was subsequently destroyed and another collected. As such, the statement was made in the course of the conspiracy between Roush, Rowe, and Minix, and the trial court did not abuse its discretion in admitting that testimony.

### Issue Three: Sufficiency of the Evidence

 Roush next argues that the State presented insufficient evidence to support her conviction. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind.2003). We look only to the probative evidence supporting the judgment and the reasonable infer-

5. However, "statements made before the defendant joined the conspiracy may be admitted." *Haak v. State*, 695 N.E.2d 944, 947 n. 1 (Ind.1998) (quoting 13 Robert Lowell Miller, Jr., *Indiana Practice* § 801.423, at 566–67 (2d ed.1995)).

ences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id.* To prove obstruction of justice, a Class D felony, the State was required to show beyond a reasonable doubt that Roush "ma[de] ... a false record ... with intent that the record ..., material to the point in question, appear in evidence in an official proceeding or investigation to mislead a public servant." I.C. § 35–44–3–4(a)(4).

■ Here, Roush contends that the State presented insufficient evidence only on the question of the false record's materiality to the point in question. Materiality in this context is defined as "that which is reasonably calculated to mislead an investigation." *Vandivier v. State,* 822 N.E.2d 1047, 1051 (Ind.Ct.App.2005), *trans. denied.* The issue of materiality is a mixed question of law and fact. *Id.* "That is, the trial court must first make a preliminary determination of materiality when assessing the admissibility of evidence. If it finds the evidence admissible, it must then submit the issue to the jury for the jury to weigh...." *Id.* at 1052. "The State is not required to prove actual impairment of the investigation. Mere potential influence with a line of inquiry is sufficient to establish materiality." *Id.* at 1054 n. 6 (citations omitted).

In essence, Roush argues that the urine sample was immaterial because the State only needed to collect a blood sample from Rowe to show the presence of a metabolite of marijuana in her body. But Roush's argument misunderstands her conviction. Materiality is not dependent on the State's ability to convict another offender; it is only "that which is reasonably calculated to mislead an investigation." *See id.* at 1051. Roush does not dispute either that the urine samples in question were switched or that she filled out the relevant forms in which she stated that Minix's urine was in fact Rowe's. Those facts were sufficient for the court and jury to determine that Roush made a false record that was reasonably calculated to mislead an investigation.

**Issue Four: Presumptive Sentence**

■ Roush also maintains that the trial court abused its discretion when it sentenced her to eighteen months, the presumptive sentence for a Class D felony. *See* I.C. § 35–50–2–7 (2004). In general, sentencing determinations under the presumptive scheme[6] are within the trial court's discretion. *Henderson v. State,* 769 N.E.2d 172, 179 (Ind.2002). If the trial court finds aggravating and mitigating circumstances, concludes they balance, and imposes the presumptive sentence, then pursuant to Indiana Code 35–38–1–3 the trial court must provide a statement of its reasons for imposing the presumptive sentence. *Rodriguez v. State,* 868 N.E.2d 551, 554 (Ind.Ct.App.2007).

■ Although a sentencing court must consider all evidence of mitigating circumstances offered by the defendant, the finding of a mitigating factor rests within the court's discretion. *Henderson,* 769 N.E.2d at 179. "A court does not err in failing to find mitigation when a mitigation claim is 'highly disputable in nature, weight, or significance.'" *Id.* (quoting

---

6. The sentencing statutes were amended in April 2005 to provide for an advisory sentence within a range. But the law that was in effect at the time of the commission of the crime controls the resolution of sentencing issues.

*Gutermuth v. State,* 868 N.E.2d 427, 431 n. 4 (Ind.2007). Roush committed the instant offense before April 2005. Therefore, we analyze the sentencing issues using the presumptive sentencing scheme in effect at that time.

*Smith v. State,* 670 N.E.2d 7, 8 (Ind.1996)). While a failure to find mitigating circumstances clearly supported by the record may imply that the sentencing court improperly overlooked them, the court is obligated neither to credit mitigating circumstances in the same manner as would the defendant, nor to explain why it has chosen not to find mitigating circumstances. *Id.*

Here, the trial court found the following aggravating circumstances:

(1) The nature and circumstances of the offense:

(a) The Defendant obstructed justice in an official investigation which prevented the State from obtaining significant evidence in the investigation of a crime involving the death of two (2) children.

(b) At the time the Defendant engaged in the act of obstruction of justice the Defendant knew that children, age two (2) and six (6), had just been tragically killed and a nineteen (19) year old seriously injured, and that the Defendant intended to prevent justice from being obtained in the deaths of the children.

Appellant's App. at 132. The court then found "as a mitigating factor the fact that

the Defendant has led a law-abiding life for a substantial period before commission of the crime." *Id.* The court also found that the aggravators outweighed the mitigator, and it ordered Roush to serve the presumptive sentence of eighteen months.

■ Roush first maintains that the court erred by not finding that her incarceration would cause an undue hardship on her two minor step-children.[7] "Many persons convicted of serious crimes have one or more children and, absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship." *Comer v. State,* 839 N.E.2d 721, 730 (Ind.App.2005) (quoting *Dowdell v. State,* 720 N.E.2d 1146, 1154 (Ind.1999)). Here, Roush argues only that she had recently gotten married to an over-the-road truck driver with two children. Roush presents no evidence that either her family or her friends would be unable to help care for the two children during her incarceration. We therefore are unable to say that the record clearly supports the special circumstances required to find an undue hardship from Roush's incarceration.[8]

Roush next argues that the trial should have found as a mitigator that she was unlikely to commit another crime.[9] In

---

7. The State asserts that "the only real sentencing issue is whether the trial court abused its discretion in not suspending [the] entire sentence," Appellee's Brief at 21, because, during sentencing, Roush argued that an eighteen month probated sentence was "appropriate," transcript at 744. We cannot agree with the State's position that Roush has waived appellate review of her executed sentence simply because she requested a nonexecuted sentence.

8. Further, Roush's reliance on *Westmoreland v. State,* 787 N.E.2d 1005, 1010–11 (Ind.Ct. App.2003), is misplaced. In *Westmoreland,* the trial court found the defendant's incarceration to be an undue hardship on the defen-

dant's children, but it did not assign significant weight to that mitigator. On appeal, we reversed the trial court on the issue of the proper weight to be afforded the mitigator, noting that the defendant had recently married, becoming a father, and had recently gained employment. But the issue Roush raises is whether the trial court here erred in not finding a proposed mitigator, not whether the court erred in its assessment of weight to a found mitigator. As such, *Westmoreland* is inapposite.

9. Roush also argues that the trial court should have considered "that she would respond affirmatively to probation or short-term incarceration." Appellant's Brief at 32. In

support, Roush notes that she has no prior criminal convictions and she presented a number of witnesses to testify to her character. But the trial court already considered Roush's lack of criminal history as a mitigator. And to the extent that Roush argues that we should assign different weight to the credibility of her character witnesses than the trial court did, we decline to do so. *See, e.g., Henderson*, 769 N.E.2d at 179.

■ Finally, Roush asserts that the trial court's finding of aggravators violated her Sixth Amendment rights under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). But "the Sixth Amendment is not violated when, through whatever judicial action, the defendant receives the presumptive sentence." *Davidson v. State*, 849 N.E.2d 591, 595 (Ind.2006). As Roush received the presumptive sentence, there is no *Blakely* violation.

### Issue Five: Appellate Rule 7(B)

■ Lastly, Roush argues that her sentence is inappropriate in light of the nature of her offense and her character. Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution "authorize[ ] independent appellate review and revision of a sentence imposed by the trial court." *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007) (quoting *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.2006)) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). *Id.* Under Appellate Rule 7(B), we assess the trial court's recognition or non-recognition of aggravators and mitigators

as an initial guide to determining whether the sentence imposed was inappropriate. *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct.App.2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." *Anglemyer*, 868 N.E.2d at 494 (quoting *Childress*, 848 N.E.2d at 1080) (alteration in original).

Roush's eighteen-month sentence is not inappropriate in light of the nature of her offense. Indeed, Roush committed the instant offense in an attempt to help a friend avoid criminal prosecution for an incident that left two small children dead and a third child seriously injured. Nor did Roush act rashly; rather, she schemed with Rowe and Minix over a period of time in their attempt to obstruct justice.

Neither is Roush's sentence inappropriate in light of her character. Roush abused her position of authority and trust as a hospital employee to gain the access necessary to commit her crime. In so doing, Roush, who was partially responsible for the care of two young children, put her career in jeopardy, demonstrating "a complete lack of reasoned judgment and a serious lack of character." *See* Appellee's Brief at 25. We cannot say that the presumptive sentence here is inappropriate.

### Conclusion

In sum, we cannot say that the trial court abused its discretion in permitting the State to amend the charging information after the omnibus date. Nor did the court err in admitting into evidence out-of-court statements from Roush's co-conspirators. Further, the State presented sufficient evidence to support Roush's conviction. And we cannot say either that the

---

support, Roush references the same evidence that she references for her proffered mitigators of undue hardship and likelihood to reoffend. As discussed above, the trial court

did not err in its consideration of that evidence. Hence, we likewise find no error in the trial court's failure to consider this proposed mitigator.

court abused its discretion in ordering Roush to serve the presumptive sentence for her conviction or that that sentence is inappropriate in light of the nature of Roush's offense and her character.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.