Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**L. ROSS ROWLAND**
Public Defender's Office
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| D. FRANK WINCONEK, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A05-1204-CR-184 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Thomas A. Cannon, Jr., Judge
Cause No. 18C05-1002-FD-40

**September 20, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

D. Frank Winconek appeals his sentence for his convictions on five counts of theft, each as a Class D felony, following his guilty plea. Winconek raises a single issue for our review, namely, whether his sentence is inappropriate in light of the nature of the offenses and his character.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

Between December of 2006 and August of 2008, Winconek served as the CEO of the Muncie Eye Center and earned a salary of $140,000. Throughout his employment with the Muncie Eye Center, Winconek repeatedly paid himself bonuses to which he was not entitled and misappropriated the business's funds for his own use. For example, between June of 2007 and December of 2008, he used the company credit card to purchase several thousand dollars worth of lessons in ballroom dancing. In total, Winconek took $77,829.83 from the Muncie Eye Center.

On February 3, 2010, the State charged Winconek with five counts of theft, each as a Class D felony. On January 17, 2012, Winconek pleaded guilty to each of the five counts. Pursuant to his plea agreement, his sentences on two of those five counts were to be concurrent with his sentences on the other counts. Sentencing was otherwise left open for the trial court's determination.

On February 14, following a sentencing hearing, the trial court ordered Winconek to serve an aggregate term of four years, with two years suspended, and the court ordered

him to pay $77,829.83 in restitution to the Muncie Eye Center. In particular, the court entered the following detailed conclusions:

The Court considers all the mitigating circumstances mentioned in the Amended Pre-Sentence Investigation Report and mentioned by the defendant. Of the mitigators mentioned the following are of greater significance.

MITIGATING CIRCUMSTANCES:

1. The defendant is fifty-six (56) years old and has no prior criminal record.

2. The defendant has served his country in the military.

3. The defendant has pled guilty in this cause of action, saving the county the expense of taking this case to trial.

4. The defendant has family support and while he has been unemployed reports to be volunteering his time working for his church.

5. The defendant has expressed remorse for his actions and offered through the terms of the accepted plea agreement to make restitution of $77,829.83[,] which amount apparently reimburses his former employer for sums that the defendant directly misappropriated for his own use. The Court assigns little weight to this mitigating circumstance considering that with the defendant's convictions he will have limited ability to obtain adequately compensated employment in order to make restitution and he has taken no action voluntarily to use the assets that were available to him to pay his former employer back, instead using those assets to pay ongoing bills to maintain his family's lifestyle as long as possible.

6. Long term imprisonment will be a hardship on the defendant's family members.

The Court also believes that there are significant aggravating circumstances . . . . They include:

AGGRAVATING CIRCUMSTANCES:

1. The harm, loss or damage suffered by the victims of defendant's crimes were significant and greater than the elements necessary to prove the commission of the theft charges. The extent of the fraudulent conduct on

3

the part of the defendant, and the lengthy period of time over which it occurred, at least since 2006, contributed significantly to the failure of the Eye Center Group, LLC and the Surgical Group, LLC, and many employees losing their jobs. Not only did the defendant commit theft by paying for personal expenses using the business credit cards, and authorizing the payment to himself of unauthorized bonuses, he was instrumental in obtaining unauthorized loans that the companies were unable to pay which contributed to their ultimate failure.

2. The defendant's crimes and actions resulted from an elaborate and extensive degree of thoughtful care and planning. The defendant was the princip[al] and mastermind of the thefts that he committed and the deceit that he perpetrated. A review of the witnesses['] statements and the police reports reveal that over several years he manipulated record books, journal entries, inventory amounts and balance sheets, dodged questions, placed blame, made excuses and misrepresented monies spent, all in an effort to conceal the truth.

3. The defendant's offenses were motivated by greed and not out of necessity. Examining the fruits of his ill[-]gotten gains, one notes that the defendant paid for with his employer's funds repairs to his personal automobile; gasoline for his personal use of his vehicle; non[-]business dinners; skin care products; a door for his residence; dance lessons for him and his wife; golf and tennis equipment and clothing and outings; supplies for a graduation party; a wedding rehearsal dinner; bedroom furniture; and flowers and dinners with a female acquaintance.

4. The defendant lied on his personal resume for employment as to his academic credentials, and he continued to fabricate his higher education credentials not only at the first change of plea hearing in this case but in the original background information provided to the court[']s probation officer[] for the preparation of her Pre-Sentence Investigation Report. This is not representative of a repentant attitude on the part of the defendant.

Appellant's App. at 336-38. The court concluded that the aggravators outweighed the mitigators. This appeal ensued.

## DISCUSSION AND DECISION

Winconek argues that his four-year sentence, with two years suspended, is inappropriate. Although a trial court may have acted within its lawful discretion in

4

determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution "authorize[] independent appellate review and revision of a sentence imposed by the trial court." Roush v. State, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). Id. Revision of a sentence under Rule 7(B) requires the appellant to demonstrate that his "sentence is inappropriate in light of the nature of his offense and the character of the offender." Ind. Appellate Rule 7(B). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. Gibson v. State, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." Roush, 875 N.E.2d at 812 (alteration original).

Moreover, "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. The principal role of appellate review is to attempt to "leaven the outliers." Id. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." Id. at 1224.

Before we address Winconek's argument, we consider the State's assertion that Winconek has waived Rule 7(B) review of his sentence because he "fails to argue that the

nature of the offenses justifies a reduced sentence." Appellee's Br. at 5. We agree. As we have repeatedly held, "revision of a sentence under Indiana Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of <u>both</u> the nature of his offenses and his character." <u>Williams v. State</u>, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008) (emphasis original). And our conclusion in <u>Williams</u> was based on the plain language of Indiana Appellate Rule 7(B), which is written in the conjunctive. <u>Id.</u> Thus, we conclude that Winconek has waived his argument on appeal.

Waiver notwithstanding, Winconek's entire argument is that that his sentence is inappropriate in light of his character. Specifically, Winconek suggests that, while he might be a liar, "that quality . . . is not illegal." Appellant's Br. at 11. Winconek further asserts that his extensive manipulation of records in the course of his crimes was "all a part of [the] theft[s]" and not indicative of his elaborate and careful planning. <u>Id.</u> at 12.

Winconek's four-year sentence, with two years suspended, is not an inappropriate outlier. As for his character, Winconek's inability to tell the truth from the beginning of these offenses through the State's inquiries for the presentence investigation report is, in the words of the trial court, "not representative of a repentant attitude." Appellant's App. at 338. And Winconek's extensive manipulation of the records goes well beyond the elements of the offenses to reveal the depths of Winconek's selfish and manipulative character.

Neither is Winconek's sentence inappropriate in light of the nature of the offenses, as so thoroughly explained by the trial court that Winconek does not try to challenge his sentence on that ground. As the trial court concluded, Winconek's repeated theft

contributed significantly to the failure of the business, which, in turn, resulted in "many employees losing their jobs." Id. at 337. Accordingly, Winconek cannot demonstrate that his sentence is inappropriate, and we affirm his sentence.

Affirmed.

KIRSCH, J., and MAY, J., concur.