**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**TIMOTHY J. LEMON**
Knox, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DALE HITE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 75A03-1208-CR-355 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE STARKE CIRCUIT COURT
The Honorable Kim Hall, Judge
Cause No. 75C01-1112-FB-52

**March 7, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Dale Hite appeals two convictions for resisting law enforcement, each as a Class B felony,[1] and his sentence following a jury trial. Hite raises two issues for our review, namely:

1.     Whether the State presented sufficient evidence to support his convictions; and

2.     Whether his sentence is inappropriate in light of the nature of the offenses and his character.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On October 16, 2009, at about 10:30 in the evening, Starke County Sheriff's Deputy James Upsall was investigating a report of a drug lab in rural Starke County. While investigating an isolated, wooded area, he heard a car with an "extremely fast" engine pull up near where he had parked his patrol car. Transcript at 209. Deputy Upsall then heard the car "take off," and, thinking an occupant of the car "might be the guy . . . coming to look for the same thing," he returned to his vehicle and pursued the other vehicle on County Road 600 North. Id. at 208-09.

Although Deputy Upsall estimated an eighth of a mile separated the two vehicles at the outset of the pursuit, he had a clear line of sight to the fleeing vehicle, which he immediately recognized as a Ford Mustang and its taillights. But then Deputy Upsall saw the taillights disappear, which, based on his experience and the fact that there were no hills in the road, Deputy Upsall believed to be the Mustang's driver "shut[ting] their

---

[1] Hite does not appeal his conviction for possession of methamphetamine, as a Class D felony.

2

lights off to try to hide from me." Id. at 211. Deputy Upsall observed the Mustang's taillights "pitch out completely black for a moment, and then they would come back on, then they would go off again, then they would come back on," several times. Id. at 212. Each time the Mustang's lights came back on, Deputy Upsall could tell the Mustang was "gaining distance" and traveling between sixty and seventy-five miles per hour on a county road. Id.

Based on the Mustang's dangerous behavior, Deputy Upsall "wasn't going to pursue this guy by any means," and he followed the Mustang "without turning [his] red and blue emergency lights on." Id. at 211. Moreover, Deputy Upsall had to occasionally slow down when he passed an intersection or a driveway to see if he could identify the taillights "down another existing road." Id. at 213.

As Deputy Upsall continued along the county road, he knew an intersection with State Road 23 to be upcoming. "State Road 23 is a busy highway in this county. And I say busy highway. It's a busy highway all hours of the day . . . ." Id. at 214. As State Road 23 came within Deputy Upsall's view, nearby streetlights exposed the Mustang with its lights off entering the intersection about an eighth of a mile in front of Deputy Upsall. When Deputy Upsall observed the Mustang "blow through the stoplight with his lights out," he "turned [his] lights and sirens on" and radioed into dispatch that he was in pursuit. Id.

Deputy Upsall approached State Road 23 while the Mustang continued along the county road. Once Deputy Upsall cleared the intersection with State Road 23 he continued along the county road to a hill in the road. As he crested the hill, he observed a

3

vehicle pulled over, which he presumed to be a bystander who had "probably almost [been] hit" by the Mustang. Id. at 217.

Deputy Upsall then came to a second hill. Upon cresting that hill, he immediately observed objects in the middle of the road that required him to take evasive action to avoid a serious accident. After stopping his vehicle, Deputy Upsall observed that the Mustang had collided with a nearby tree. Three people had been ejected from the Mustang. Two people, Amber McMillen and Nicholas White, were deceased. Hite, the third person, received emergency aid. It was later determined that the Mustang hit the tree while going at least 124 miles per hour.

The State charged Hite with, among other things, two counts of resisting law enforcement, as Class B felonies based on the resulting deaths of McMillen and White. During the ensuing trial, the State presented DNA evidence that matched Hite's DNA to a sample on the steering wheel and White's DNA to a sample from the back seat. The State further called two crash reconstruction experts who testified that, based on the passengers' injuries and the scene, White had to have been sitting in the back seat of the Mustang at the time of the crash, McMillen in the front passenger seat, and Hite in the driver's seat. The State also called Melinda Tillman, who testified that she observed Hite driving the Mustang with McMillen in the front passenger's seat and White in the back seat less than thirty minutes before the accident. The jury found Hite guilty of both counts of Class B felony resisting law enforcement. The trial court entered its judgment of conviction and ordered Hite to serve an aggregate term of thirty years executed in the Department of Correction. This appeal ensued.

## DISCUSSION AND DECISION

### Prima Facie Standard

We initially note that the State has not filed an appellee's brief.[2]  In such circumstances, we do not undertake to develop an argument on the appellee's behalf, and we may reverse upon an appellant's prima facie showing of reversible error.  Morton v. Ivacic, 898 N.E.2d 1196, 1199 (Ind. 2008).  Prima facie error means error "at first sight, on first appearance, or on the face of it."  Id. (quotation omitted).

### Issue One:  Sufficiency of the Evidence

Hite first challenges the sufficiency of the State's evidence underlying his two Class B felony convictions for resisting law enforcement.  When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses.  Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003).  We look only to the probative evidence supporting the verdict and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt.  Id.  If there is substantial evidence of probative value to support the conviction, it will not be set aside.  Id.

To demonstrate that Hite committed Class B felony resisting law enforcement, the State was required to show that Hite knowingly or intentionally fled from a law enforcement officer after the officer had, by visible or audible means, including operation

---

[2]  We note that the transcript, which was transmitted to this court on December 10, 2012, does not include Hite's sentencing hearing.  It is the appellant's duty to present an adequate record clearly showing an alleged error, and, where the appellant fails to fulfill this burden, the issue is deemed waived.  Thompson v. State, 761 N.E.2d 467, 471 (Ind. Ct. App. 2002).  We conclude that the records before us—namely, the trial transcript and the trial court's written sentencing order, which is included in the Appellant's Appendix—are sufficient to resolve Hite's appellate contentions.  Accordingly, we will consider Hite's arguments under our prima facie error standard of review.

of the law enforcement officer's siren or emergency lights, identified himself and ordered Hite to stop, and that Hite's act caused the death of another. See Ind. Code § 35-44-3-3 (2008). Here, Hite argues that the State failed to show that he was the driver of the Mustang when it was wrecked and that Deputy Upsall had adequately "turned on [his] lights and sirens." Appellant's Br. at 4.

Hite's arguments on this issue are merely requests to reweigh the evidence, which we will not do. As described in our statement of facts, the State presented sufficient evidence to show that Hite was the driver of the Mustang, including DNA evidence, crash reconstruction testimony, and the testimony of a witness who had seen Hite driving the Mustang less than a half-hour before the crash. And Deputy Upsall testified that he activated his lights and siren as Hite drove the Mustang across State Road 23, which was before Hite drove farther along County Road 600 North, over a hill, past a car, up another hill, and into the tree. As such, Hite cannot demonstrate prima facie error on this issue, and we affirm his convictions.

### Issue Two: Sentencing

Hite also asserts that his thirty-year aggregate sentence is inappropriate. Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution "authorize[] independent appellate review and revision of a sentence imposed by the trial court." Roush v. State, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). Id. Revision of a sentence under Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is

6

inappropriate in light of the nature of his offense and his character.  <u>See</u> Ind. Appellate Rule 7(B); <u>Rutherford v. State</u>, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).  We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate.  <u>Gibson v. State</u>, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006).  However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review."  <u>Roush</u>, 875 N.E.2d at 812 (alteration original).

Moreover, "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference."  <u>Cardwell v. State</u>, 895 N.E.2d 1219, 1222 (Ind. 2008).  Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented.  <u>See</u> <u>id.</u> at 1224.  The principal role of appellate review is to attempt to "leaven the outliers."  <u>Id.</u> at 1225.  Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case."  <u>Id.</u> at 1224.

In its sentencing order, the trial court stated as follows:

Aggravating Factors:

(1)     The Defendant has a history of criminal or delinquent behavior.

(2)     The Defendant has recently violated the conditions of probation.

(3)     The Defendant was in a position of having care, custody, or control of the victims of the offense.

(4)     The Defendant was operating a vehicle at high rates of speed of over 100 mph with his headlights off.

Mitigating Factors:

The Court finds no mitigating factors.

The Court finds that the aggravating factors far outweigh any mitigating factors.

The present offense involves the abuse of illegal drugs and the Defendant has previous criminal convictions involving the abuse of illegal drugs, has failed to appreciate the criminal aspect of such substance abuse, and has either failed to participate in substance treatment programs or has failed to apply the treatment to the Defendant's life in a successful manner that would have prevented the abuse of illegal drugs which led to the present conviction[s].

The Defendant has an anti-social character, no remorse, and is highly likely to reoffend. The Defendant gave a statement to a law enforcement officer, during which the Defendant showed no remorse for his actions which directly caused the death of his two friends. In fact, the Defendant stated that he wanted to go through the wreckage of the destroyed Mustang to salvage parts that he could use on another Mustang.

There is no evidence that leads the Court to believe that the Defendant will stop using Methamphetamine. The Indiana Risk Assessment System puts the Defendant in the high risk category to reoffend. In fact, there is every reason to believe that if the Defendant is in a similar situation in the future, it is likely that he will behave in the same manner. He simply does not fully appreciate the danger that he poses to himself and others. If he does appreciate the danger, he is willing to accept the risk. As a result, he must accept the consequences.

Appellant's App. at 25-26. The court then ordered Hite to serve fifteen years for each Class B felony conviction, to be served consecutively.

On appeal, Hite first argues that his sentence is inappropriate because he "is not the worst offender nor has he committed the worst type of crime." Appellant's Br. at 8. But Hite did not receive the maximum sentence for either of his Class B felonies, which is twenty years. See I.C. § 35-50-2-5. Accordingly, he was not sentenced as if he were the worst offender or these were the worst offenses, and this argument is without merit.

8

Hite also suggests that his sentence is inappropriate in light of the offenses because the State's evidence against him was weak or equivocal. In light of our assessment of the State's evidence in Issue One, we reject this argument. The evidence supported Hite's convictions beyond a reasonable doubt.

Hite next argues that his sentence is inappropriate in light of his character because he was only twenty-six at the time of sentencing and because his criminal history is insignificant in light of the gravity, nature, and number of prior offenses. We cannot agree. Hite had two drug related adjudications as a juvenile, one of which would have been a Class C felony if committed by an adult. As an adult, he had five convictions at the time of his sentencing in this matter, two of which were drug related and three of which were felonies, and a federal charge pending for the manufacture of methamphetamine over fifty grams. And Hite has had three prior probations revoked.[3] Especially in light of Hite's age, the nature, gravity, and number of his prior offenses speaks poorly of his character.

In sum, Hite cannot demonstrate prima facie error on this issue. His thirty-year sentence is not inappropriate in light of the nature of the offenses or his character, and we affirm his sentence. And, again, we affirm both of Hite's convictions for resisting law enforcement, each as a Class B felony.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.

---

[3] In light of this, we do not consider Hite's additional assertion that "his prior history is not indicative of an individual that would not benefit from a probationary term." Appellant's Br. at 9.