## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 30 2015, 8:00 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Elizabeth A. Bellin | Gregory F. Zoeller |
| Elkhart, Indiana | Attorney General of Indiana |
| | |
| | Kelly A. Miklos |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Duane R. Tackett, | June 30, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 20A03-1410-CR-368 |
| v. | Appeal from the Elkhart Superior Court |
| State of Indiana, | The Honorable George W. Biddlecome, Judge |
| *Appellee-Plaintiff.* | Cause No. 20D03-1403-FB-32 |

**Najam, Judge.**

## Statement of the Case

[1]     Duane R. Tackett appeals his convictions for two counts of dealing in methamphetamine, both as Class B felonies.  Tackett presents one issue for our

review, namely, whether his sentence is inappropriate in light of the nature of his offenses and his character.

[2] We affirm.

## Facts and Procedural History

[3] In January 2014, a cooperating source ("the CS") approached the Goshen Police Department's Interdiction and Covert Enforcement Unit ("ICE") regarding Tackett's girlfriend, Zabrina Brown. Brown had contacted the CS in hopes that she could sell methamphetamine to the CS, information that the CS relayed to ICE. In response, several undercover officers with ICE—Undercover Officer 120 ("UC 120"), Undercover Officer 151 ("UC 151"), and Undercover Officer 254 ("UC 254")—arranged a controlled buy of methamphetamine between the CS and Brown to occur on January 27 at a gas station in Goshen.

[4] On January 27, UC 254 drove the CS to the gas station. UC 120 and UC 151 monitored the transaction from a second vehicle, parked at a nearby vantage point. When the CS and UC 254 arrived at the gas station, the CS identified Brown as she exited the gas station. Brown crossed the parking lot and entered the passenger side of a blue BMW 525i that belonged to Tackett. At the time, Tackett was outside pumping gas into the BMW, and he waved the CS over to his vehicle. The CS then approached Tackett's vehicle and entered on the rear passenger side. When the CS entered the BMW, Tackett reentered the vehicle. At this point, the CS purchased two grams of methamphetamine for $200 from

Tackett and Brown. As a result of Tackett's involvement in the controlled buy, he also became a target in ICE's investigation of Brown.

[5] Two days later, on January 29, the same ICE undercover officers arranged a second controlled buy of methamphetamine between the CS and Brown to occur at a different gas station in Goshen. For the second time, UC 254 drove the CS to the gas station, while UC 120 and UC 151 conducted surveillance from another vehicle parked nearby. When the CS and UC 254 arrived at the gas station, they observed Tackett's blue BMW already parked there. When UC 254's vehicle came to a stop, Brown exited the BMW's driver side and walked to UC 254's passenger window. The CS then exchanged $100 for two grams of methamphetamine, a gram each contained in two separate plastic bags. Believing the transaction to be over, the CS and UC 254 exited the gas station's parking lot and turned onto an adjacent road. Shortly thereafter, Tackett ran across the parking lot and along the edge of the road, yelling to UC 254 and the CS, "You owe me a hundred dollars." Tr. at 136.

[6] UC 254 acknowledged Tackett and pulled back into the gas station's parking lot. Brown indicated that she had mistakenly provided two grams of methamphetamine, an amount worth $200, for which the CS had paid only $100. Thus, the CS returned one gram of the methamphetamine, and the two again left the gas station.

[7] On March 28, the State charged Tackett with two counts of dealing in methamphetamine, both as Class B felonies, which corresponded to the sales

that occurred on January 27 and 29.  The trial court held Tackett's jury trial on July 21 and 22, at which Brown testified against Tackett.[1]  At the conclusion of his trial, the jury convicted Tackett on both counts.  After a sentencing hearing, held on September 18, the trial court sentenced Tackett to an aggregate term of, sixteen years executed in the Indiana Department of Correction.  In support of the sentence the court imposed, it stated:

> In arriving at that sentence, the Court notes that the Defendant has four prior felony convictions, one previous misdemeanor conviction.  The Court disputes the argument that the Defendant performed well in the community corrections facility setting. The Court notes that he violated the terms of his placement in a community corrections setting with respect to his 2005 sentences for Possession of Marijuana[,] as a Class D felony[,] and Maintaining a Common Nuisance[,] as a Class D Felony.
>
> The Court further notes that the Indiana RISK Assessment System deems the Defendant a high risk to re-offend.[2]  If the Defendant's incarceration places a hardship on his mother, that was the Defendant's choice . . . .  So . . . if his mother suffers a hardship, he has no one to blame but himself.
>
> He is clearly addicted to illicit drugs; however, the court notes that he was given the opportunity to address that addiction while at the Indiana Department of Correction facility.  He either failed or refused to do so in a responsible manner.

---

[1] Brown entered an open plea to three counts of dealing in methamphetamine, all as Class B felonies.  In her plea agreement, Brown agreed to testify against Tackett.  Ultimately, Brown received concurrent sentences of twelve years in the Indiana Department of Correction, with six years suspended to probation.

[2] As Tackett correctly points out on appeal, he was actually deemed a moderate risk to reoffend.

I do not agree with counsel's assessment that Miss Brown is the more culpable of these two people. . . . He was clearly involved in this sale from the testimony of the officers, not Miss Brown. When the second transaction occurred, apparently the undercover officer didn't pay for all of the drugs that were sold to him. Who tried to collect the extra money? It wasn't Miss Brown. It was Mr. Tackett.

Tr. at 251-53. This appeal ensued.

## Discussion and Decision

[8] Tackett contends that his sentence is inappropriate in light of the nature of his offenses and his character. Article 7, Sections 4 and 6 of the Indiana Constitution "authorize[] independent appellate review and revision of a sentence imposed by the trial court." *Roush v. State*, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration in original). This appellate authority is implemented through Indiana Appellate Rule 7(B). *Id.* Revision of a sentence under Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character. Ind. Appellate Rule 7(B); *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." *Roush*, 875 N.E.2d at 812 (alteration original).

[9] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222, 1224 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224.

[10] Specifically, Tackett argues that his sentence is inappropriate because (1) Brown, whom Tackett characterizes as being more culpable than he is, received a lesser sentence than he received; (2) he suffers from schizophrenia; (3) he has a substance abuse problem; and (4) he was actually deemed a moderate, and not a high, risk to reoffend under the Indiana Risk Assessment standards. We cannot, however, state that Tackett's sentence is inappropriate.

[11] Tackett's first contention relates to the nature of his offenses, in support of which he points us to *Cardwell*. Particularly, Tackett relies on *Cardwell* in an effort to portray his own offense as an outlier. He compares his executed sentence of sixteen years to Brown's executed sentence of six years and argues, as he did to the trial court, that he "was the 'less culpable' participant [in their crimes], as [he] did not actively participate in either of the controlled buys for which he was charged and found guilty." Appellant's Br. at 9. But the trial court expressly rejected this argument, and we cannot say that the court erred when it did so. Indeed, at the January 27 sale of methamphetamine, Tackett

waved to the CS, and the sale did did not occur until Tackett reentered his BMW. And as noted by the trial court, when the CS neglected to pay the full price for the methamphetamine purchased on January 29, Tackett, not Brown, attempted to "collect the extra money." Tr. at 253.

[12] Further, *Cardwell* is inapposite here. First, *Cardwell* held that the trial court was not required to compare two defendants' sentences to each other. *See* 895 N.E.2d at 1226. Second, Tackett's situation is unlike that present in *Cardwell*. There, Cardwell received a thirty-four year sentence, and his co-defendant received only an eighteen-month sentence, despite the fact that Cardwell was either equally "or even less culpable." *Id.* Here, Brown's executed term is ten years less than Tackett's sentence, but Brown's entire sentence is only four years less than Tackett's sentence, which is much different from the disparity present in *Cardwell*. Moreover, Tackett ignores the fact that Brown pleaded guilty and he did not. Therefore, Tackett's sentence is not an outlier. The nature of his offenses do not support a revision of his sentence, and we affirm in this respect.

[13] Tackett's next three contentions—his schizophrenia, his substance abuse, and his risk assessment—all relate to his character. Although, as noted above, the trial court did err when it stated that Tackett was deemed a high risk to reoffend, nevertheless we cannot say that Tackett's character requires revision of his sentence. As the trial court noted, Tackett has four prior felony convictions, several of which are drug related, and one prior misdemeanor conviction. Further, Tackett previously violated the terms of his community

corrections placement.  Thus, Tackett's sentence also is not inappropriate in light of his character.

[14]    Affirmed.


Baker, J., and Friedlander, J., concur.