**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**LILABERDIA BATTIES**
Batties & Associates
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHUKWUEMEKA CHIDEBELU-EZE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1308-CR-720 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-1208-FC-60186

**May 27, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Chukwuemeka Chidebelu-Eze appeals his convictions for two counts of battery, one as a Class C felony and one as a Class D felony, following a bench trial. Eze raises four issues for our review, which we consolidate and restate as the following three issues:

1.     Whether the State presented sufficient evidence to support Eze's conviction for battery, as a Class C felony;

2.     Whether Eze's two convictions for battery are in violation of Indiana's prohibitions against double jeopardy; and

3.     Whether Eze's sentence is inappropriate in light of the nature of the offenses and his character.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

In March of 2012, Patrice Anderson met Eze when he became her chiropractor. Eze and Anderson's relationship became sexual by early April, but it had ceased being so sometime in May. On June 10, 2012, Eze asked Anderson to come over to his apartment, and she did so. Shortly before Anderson arrived, another woman, Karen Cantrell, was at his apartment. Cantrell was also Eze's patient and in a "personal" relationship with him. Transcript at 126. Eze's minor child was in the apartment at the time Cantrell and Anderson were present.

When Anderson arrived, Eze asked Cantrell to go upstairs. Upon Eze answering his door, Anderson noticed that he had a "weird" expression on his face. Id. at 34. Eze invited Anderson in and told her he was going to get a glass of water, and Anderson observed him communicating with Cantrell. Anderson said to Eze, "am I stupid or something?" Id. at 39. Eze then walked "briskly" toward Anderson, grabbed the tops of

2

her arms, and began to push her. Id. Anderson freed her right hand and slapped him. Anderson then told Eze to let her go. In response, Eze put his hands around Anderson's neck and choked her. While choking her, he moved her towards a bed in the apartment, where he "smacked [her] in [her] head multiple times." Id. at 43.

Eze then "just let go and he walked . . . away." Id. Anderson was disoriented and struggled to breathe, and she heard him tell her to "[g]et out." Id. Anderson attempted to reach her purse but Eze "grab[bed] the top of [her] shirt" and "pushed [her] out" of the door to the apartment and onto the ground. Id. at 44-45. Anderson looked up and saw Eze with her purse and asked for it. Eze then "moved towards [her] and [she] thought he was just going to throw [the] purse and keys . . . . Instead, he lunged forward and he head-butted" Anderson. Id. at 47-48. The head-butt left Anderson "disoriented"; it gave her "blurred" vision; it left her with "an imbalance when walking or trying to walk"; and caused her to have "difficulty focusing." Id. at 51. She recalled falling backward from the blow but the "very next thing" she recalled was "opening [her] eyes" on a sofa across from Eze's apartment door. Id. Anderson did not remember getting onto that sofa. When Anderson tried to stand, she "felt like [she] was free falling." Id.

Nonetheless, Anderson reached her car. She stayed in the parking lot for about forty-five minutes before she attempted to drive to her home. En route, she had difficulty driving. Near the intersection of 86th Street and Meridian, she stopped abruptly, hit her head on the steering wheel, and "close[d her] eyes" for "a while." Id. at 59. Eventually, she called her husband, who took her to St. Vincent Hospital. At the hospital, she was

diagnosed with a concussion. She continued to experience symptoms from her concussion over the following week.

On September 4, 2012, the State charged Eze in relevant part with battery, as a Class C felony, and battery, as a Class D felony. Following a bench trial, the trial court found Eze guilty of those two charges and sentenced him to an aggregate term of five years, with two years executed in the Department of Correction, one year in community corrections, and two years suspended (one year suspended to probation). This appeal ensued.

**DISCUSSION AND DECISION**

**Issue One: Sufficiency of the Evidence**

Eze first argues that the State failed to present sufficient evidence to support his conviction for battery, as a Class C felony. In particular, Eze asserts that the State failed to establish that he caused serious bodily injury to Anderson and to disprove his affirmative defense that the head-butt was an accident. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the judgment and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside. Id. To demonstrate battery, as a Class C felony, the State was required to show that Eze knowingly or

4

intentionally touched Anderson in a rude, insolent, or angry manner, and that the touching resulted in serious bodily injury to Anderson. Ind. Code § 35-42-2-1(a).

The State presented sufficient evidence to demonstrate that Eze caused Anderson serious bodily injury. "Serious bodily injury" means "bodily injury that . . . causes: . . . (2) unconsciousness; [or] (3) extreme pain . . . ." I.C. § 35-41-1-25 (2006) (currently codified at I.C. § 35-31.5-2-292). "Whether bodily injury is 'serious' is a question of degree and, therefore, appropriately reserved for the finder of fact." Whitlow v. State, 901 N.E.2d 659, 661 (Ind. Ct. App. 2009).

Here, Anderson testified that, immediately after Eze head-butted her, she momentarily blacked out. This qualifies under the statute as serious bodily injury. I.C. § 35-41-1-25(2); see Ricks v. State, 446 N.E.2d 648, 650-51 (Ind. Ct. App. 1983). Anderson also testified that she was in pain for more than a week following the head-butt. This also qualifies. I.C. § 35-41-1-25(3). Insofar as Eze argues that Anderson's injuries were actually caused by her striking her head on her steering wheel, Eze's argument is simply a request for this court to reweigh the evidence, which we will not do.

The State also presented sufficient evidence to disprove Eze's argument that the head-butt was an accident. Eze's argument on this issue is premised on his own testimony that he slipped on a rug and accidentally head-butted Anderson. But we are in no position to credit Eze's testimony over Anderson's explicit testimony that there was "[n]o" possibility "that the head-butt occurred on . . . accident." Transcript at 121. In other words, Eze again impermissibly requests this court to reweigh the evidence.

5

Accordingly, the State presented sufficient evidence to support Eze's conviction for battery, as a Class C felony.

## Issue Two: Double Jeopardy

Eze next asserts that his conviction for battery, as a Class C felony, and his conviction for battery, as a Class D felony, violate Indiana's prohibitions against double jeopardy. As our Supreme Court has explained:

> In Richardson v. State, 717 N.E.2d 32 (Ind. 1999), this Court concluded that two or more offenses are the same offense in violation of article 1, section 14 if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one challenged offense also establish the essential elements of another challenged offense. Under the actual evidence test, we examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts. Id. at 53. To find a double jeopardy violation under this test, we must conclude that there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." Id. The actual evidence test is applied to all the elements of both offenses. "In other words . . . the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." Spivey v. State, 761 N.E.2d 831, 833 (Ind. 2002).
>
> Our precedents "instruct that a 'reasonable possibility' that the jury used the same facts to reach two convictions requires substantially more than a logical possibility." Lee v. State, 892 N.E.2d 1231, 1236 (Ind. 2008) (citing cases). The reasonable possibility standard "fairly implements the protections of the Indiana Double Jeopardy Clause and also permits convictions for multiple offenses committed in a protracted criminal episode when the case is prosecuted in a manner that insures that multiple guilty verdicts are not based on the same evidentiary facts." Richardson, 717 N.E.2d at 53 n.46. The existence of a "'reasonable possibility' turns on a practical assessment of whether the [fact-finder] may have latched on to exactly the same facts for both convictions." Lee, 892 N.E.2d at 1236. We evaluate the evidence from the [fact-finder's] perspective and may consider the charging information, jury instructions, and arguments of counsel. Id. at 1234.

Garrett v. State, 992 N.E.2d 710, 719-20 (Ind. 2013) (some alterations and omissions original).

We agree with the State that Eze's argument on this issue is too lacking to allow for judicial review. As the State explains:

> Though Defendant cites legal authority explaining the actual evidence test and quotes the charging information for each battery charge in his argument, Defendant provides no argument explaining why his two convictions violate the actual evidence test under the specific facts and circumstances of this case. In fact, in his argument section, he merely copies the charging information and then recites the elements of [C]lass C felony battery without any further argument or explanation. In his summary, he makes conclusory assertions that his convictions violate double jeopardy because they are based on the "same factual evidence" or the "same factual allegations," but again he provides no cogent reasoning and does not address the actual evidence present at trial, the arguments of counsel, the trial court's statements in rendering a verdict, or any other relevant information about this case.

Appellee's Br. at 19 (citations omitted). Thus, Eze has not preserved this issue for appellate review, and this court will not make Eze's arguments for him. See, e.g., M.K. v. Ind. Dep't of Child Servs. (In re A.G.), 6 N.E.3d 952 (Ind. Ct. App. 2014). Accordingly, we cannot say that Eze's two convictions for battery violate Indiana's prohibitions against double jeopardy.

**Issue Three: Appellate Rule 7(B)**

Finally, Eze asserts that his sentence is inappropriate.[1] Article VII, Sections 4 and 6 of the Indiana Constitution "authorize[] independent appellate review and revision of a sentence imposed by the trial court." Roush v. State, 875 N.E.2d 801, 812 (Ind. Ct. App.

---

[1] Although Eze's argument on appeal conflates our review under Appellate Rule 7(B) with our review of his sentence for an abuse of discretion, it is clear that Eze intended to argue only that his sentence is inappropriate under Rule 7(B).

2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). Id. Revision of a sentence under Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character. See App. R. 7(B); Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. Gibson v. State, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." Roush, 875 N.E.2d at 812 (alteration original).

Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222, 1224 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." Id. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." Id. at 1224.

On appeal, Eze argues that his sentence is inappropriate because his aggregate term of five years is one year above the advisory sentence for a Class C felony and, although he has had extensive contacts with the criminal justice system, those "contacts did not result in convictions for felonies[] and dealt mainly with driving offenses, as well as two possession of marijuana charges." Appellant's Br. at 24-25; see also I.C. § 35-50-

8

2-6(a) (defining the advisory sentence for a Class C felony as four years with a sentencing range between two and eight years). We cannot agree with Eze's analysis.

The trial court entered a carefully circumscribed sentence that is not inappropriate. Again, the court ordered Eze to serve five years as follows: two years in the Department of Correction, one year in community corrections, and two years suspended, one of which is to be served on probation. Thus, while the trial court ordered Eze to serve five years, his initial executed term is two years below the advisory sentence for a Class C felony, his full executed term is one year below the advisory sentence, and his combined executed and probationary period is equivalent to the advisory sentence.

Moreover, the nature of the offenses and Eze's character do not justify declaring the court's careful sentence an "outlier[]." Cardwell, 895 N.E.2d at 1225. Eze repeatedly struck Anderson before he head-butted her, which caused her to momentarily lose consciousness, be treated at a hospital, and suffer a week of ongoing pain. And Eze has a significant criminal history over the course of about fifteen years. He has been arrested twenty times and convicted of six misdemeanors. Eze's convictions include several crimes of dishonesty and marijuana offenses, as well as a hit and run. He has twice had his probation revoked and, at the time he was sentenced for the instant offenses, had an active warrant for failing to appear on a notice of probation violation in another case. We cannot say that the nature of the offenses or Eze's character render the court's careful sentence inappropriate. We affirm Eze's convictions and sentence.

Affirmed.

VAIDIK, C.J., and BROWN, J., concur.

9