## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 15 2016, 11:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marce Gonzalez, Jr.
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Albert B. Lucero, III, *Appellant-Defendant,* | November 15, 2016 |
| | Court of Appeals Case No. 45A03-1603-CR-639 |
| v. | Appeal from the Lake Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Salvador Vasquez, Judge |
| | Trial Court Cause No. 45G01-1506-F4-26 |

**Najam, Judge.**

# Statement of the Case

Albert B. Lucero, III appeals his convictions, following a jury trial, for child molesting, as a Level 4 felony, and performing sexual conduct in the presence of a minor, as a Level 6 felony. He also appeals his habitual offender enhancement. He raises the following three issues:

1. Whether the trial court erred in removing Lucero from the courtroom during his sentencing.

2. Whether Lucero waived his right to a jury trial on the habitual offender charge by stipulating to his habitual offender status.

3. Whether his sentence was inappropriate in light of the offenses and his character.

We affirm.

# Facts and Procedural History

Lucero is the father and only parental guardian of C.L., who was born in December 2001. Until April 2015, Lucero and C.L. lived with C.L.'s grandmother, C.L.'s brother, and C.L.'s brother's girlfriend, Melinda Rogers, in East Chicago. After that time, Lucero and C.L. moved around and, at one point, slept in the lobby of a jewelry store after hours.

When C.L. was between the ages of twelve and fourteen, Lucero repeatedly fondled her breasts and slapped her buttocks. Lucero told C.L. that he was checking for lumps and to see if she needed to wear a bra. One night, while

C.L. was sharing a bed with Lucero in her grandmother's house, C.L. awoke to feel something poking her in the back. C.L. realized that the back of her shirt was wet with what she described as a "whitish clear-ish kind of liquid." Tr. at 93. C.L. woke Lucero, whom she thought was pretending to be asleep, and he told her, "that's what happens when a man is not with a woman for a long time." *Id*. at 94.

[5] During that same period of time, Lucero also tried to get C.L. to wear costumes featuring revealing clothing and lingerie. The first costume was a bunny outfit that was silky and slightly transparent. The second costume was a transparent nurse's outfit that included a red lace bra and panties. Lucero bought C.L. lace and silk undergarments and told her that "he knew how to dress [C.L.] sexy, but classy." *Id*. at 117. Lucero also told C.L. that it was fine for him to see her body, stating, "It's fine. I made it. I can see it." *Id*.

[6] One night when C.L. was thirteen and she and Lucero were staying in the local jewelry store after hours, C.L. was eating dinner in the lounge area of the store and Lucero was in a backroom. Lucero called C.L. into the backroom and showed her photographs on his cellphone of a woman in lingerie on a bed. Lucero showed C.L. another photograph depicting what C.L. later described as a "girl's private area with a lollipop in her." *Id*. at 102. C.L. noticed that Lucero had a bulge in his pants. Lucero instructed C.L. to stand in the corner and, while C.L.'s back was turned, Lucero began masturbating and moaning. C.L. tried to cover her ears so she did not have to listen to Lucero.

[7] After a few minutes, Lucero asked C.L. to back up so he could "touch [her] butt" and make it "feel more realistic to him." *Id*. at 106. Lucero then asked C.L. to sit on his covered lap and "wiggle," and she did so. *Id*. at 107-08. Lucero then told C.L. to stand up and to turn around to face him. C.L. was reluctant to turn around, but Lucero said, "It's not a snake. It's not going to bite you." *Id*. at 105. C.L. turned around and saw on the floor in front of Lucero the same substance that C.L. had seen in the bedroom before. Lucero told C.L. to get a mop so he could clean it up. On another occasion while Lucero and C.L. were sleeping in the jewelry store after hours, Lucero told C.L. that he would give her the Wi-Fi password if she would "jack [him] off." *Id*. at 113.

[8] Later that same year, C.L. and Lucero went to the Indiana sand dunes. Because it was raining, they stayed in the car. Lucero began to look at the same photographs he had shown to C.L. previously inside the jewelry store. Lucero leaned back his seat and told C.L. to "keep an eye out." *Id*. at 110. C.L. looked out of the car window, and she heard Lucero masturbating and moaning. Lucero asked C.L. to put her leg up on the car's dash board so he could touch her, and he began to touch C.L.'s inner-thigh while he masturbated. Lucero finished and asked C.L. to pass him a grease cloth so that he could clean up.

[9] At first, C.L. did not tell anyone what Lucero was doing to her because she was scared of him. Lucero had told C.L. that if she talked to anyone like the Department of Child Services ("DCS"), they would send her to live with her mother. Lucero had told C.L. that her mother was a prostitute and would sell

C.L. for drug money. However, later that year, C.L. saw her brother's former girlfriend, Rogers, at a drug store. Rogers immediately noticed that C.L. wore tight pants and high heels. After she spoke with Rogers for a while, C.L. told Rogers what Lucero was doing with her. Rogers immediately called DCS.

[10] When DCS attempted to investigate, they initially could not locate Lucero or C.L. Eventually, a DCS investigator called Lucero directly. Lucero lied and stated that he was living in South Dakota on a reservation. However, DCS tracked C.L. down to a nearby apartment in East Chicago and went to the apartment. Lucero called C.L. to warn her that DCS was coming and instructed her to change her appearance, disguise herself, escape out of the back door of the apartment, and meet him in an alley. C.L. followed Lucero's instructions and met him in a nearby alley where he had parked his car and hidden in the bushes. Lucero then drove C.L. to Nebraska.

[11] C.L. spent several weeks in Nebraska until she called her grandmother and asked her grandmother to come and get her. C.L.'s grandmother drove C.L. back to Indiana and called DCS. After C.L. was interviewed by DCS, the State filed criminal charges against Lucero. Lucero twice violated a no-contact order with C.L.: prior to his trial, Lucero sent C.L. a letter from prison, and, during his trial, Lucero mouthed the words "I love you" and "you can stop this" to C.L. over and over while she was on the witness stand preparing to testifying. *Id.* at 393.

[12] Following a jury trial, Lucero was convicted of child molesting as a Level 4 felony, and performing sexual conduct in the presence of a minor, as a Level 6 felony. Lucero admitted that he had two prior unrelated felony convictions and "stipulate[d] to the habitual offender enhancement." *Id*. at 328. According to Lucero's pre-sentence investigation report, he had three adjudications as a juvenile delinquent, one misdemeanor conviction as an adult, and three felony convictions as an adult. Lucero's felony convictions were for attempted burglary in Florida, and Class C felony burglary and Class C felony criminal recklessness in Indiana.

[13] On February 19, 2015, the trial court held Lucero's sentencing hearing. At the beginning of the hearing, the trial court noted that Lucero was communicating with correctional officers and court staff that he may act in such a way as to force someone to kill him. As soon as Lucero was brought into the courtroom for the hearing, he began interrupting the proceedings despite being represented by counsel. The trial court asked Lucero to be quiet and told Lucero that he would have "the opportunity to say something in a few moments." *Id*. at 361. Lucero continued to interrupt the proceedings, and the trial court continued to order Lucero to stop interrupting. The trial court told Lucero:

> THE COURT: It is not proper for you to interrupt me or interrupt these proceedings. But I'll—as I've indicated before, I'll give you the opportunity to speak, if we get to that point.
>
> MR. LUCERO: If.

THE COURT: But you don't have an absolute right to be here. I can make the finding that you've become so disruptive that you should no longer be part of this hearing. It's something that I rarely do because I try to be extremely patient—particularly when it comes to a sentencing hearing on . . . a person who's been found guilty as a result of a jury trial. You should be here and you should have the opportunity to be heard, but that's not absolute.

If you continue to interrupt me, Mr. Lucero, I want you to be perfectly clear. I will excuse you and we will conduct the sentencing hearing in your absence without you being here. So I'm asking you at this point to be quiet. And I'm requesting you to not interrupt the proceedings anymore. Keep that in mind.

*Id*. at 364-65.

[14] Lucero continued to interject throughout the hearing, including raising objections despite his counsel telling him that he could not speak out. Lucero also stated, "[t]his is all a setup," and, "[t]his is all a lie." *Id*. at 379. The trial court once again warned Lucero and stated, "[y]ou need to stop interrupting me. If you do it one more time, I will excuse you." *Id*. at 380. Almost immediately, Lucero again interrupted his own counsel. The trial court once again told Lucero to stop speaking and the court would give him an opportunity to speak if they got to that point in the hearing.

[15] While he reviewed the presentence investigation, Lucero stated, "[t]his is bullshit." *Id*. at 381. When the prosecutor began to read the victim impact statement from C.L., Lucero crumbled a piece of paper and interrupted by saying, "[i]t's a lie. It's not her. I already know my daughter." *Id*. at 382.

[16] At that point, Lucero had interrupted the proceedings approximately twenty times. The trial court ordered that Lucero be removed from the courtroom because of the constant interruptions. In explaining its decision, the trial court stated, in part:

> Lucero is now removed from the courtroom. And I think I've given him more than enough opportunity to be present and more than enough opportunity to be part of this proceeding—a significant proceeding, as I see it. … I removed him as opposed to holding him in contempt. He's upset. But being upset does not give rise to being excused for being disruptive.

*Id.* at 382-83. The trial court also noted that it was "highly concerned" about Lucero's threat of suicide at the hands of the guards and that it did not want "to take the chance that he would blow up in our presence." *Id.* at 383-84. Lucero's counsel did not object to his client being removed from the courtroom.

[17] Lucero's counsel remained present throughout the sentencing hearing and took part in those proceedings. At the conclusion of the sentencing hearing, the trial court found there were no mitigating circumstances. Regarding aggravating factors, the trial court noted that Lucero demonstrated poor character by being dishonest, manipulative, and violating the no contact order. The trial court also noted that Lucero's criminal history and Lucero's violation of a position of trust as a father were aggravating circumstances. The trial court sentenced Lucero to ten years on Count I, child molesting as a Level 4 felony, and two years for Count III, performing sexual conduct in the presence of a minor as a Level 6 felony. The trial court enhanced Count I by fourteen years for Lucero's status

as a habitual offender and ordered Lucero to serve his sentences for Counts I and III consecutively. Thus, Lucero's aggregate sentence was twenty-six years in the Indiana Department of Correction. This appeal ensued.

## Discussion and Decision

### *Issue One: Right to Be Present at Sentencing*

[18] Lucero contends that the trial court erred when it removed him from the court room and held his sentencing hearing without him. We review a trial court's decision to remove a defendant from the courtroom and continue his trial in his absence for an abuse of discretion. *Wilson v. State*, 30 N.E.3d 1264, 1269 (Ind. Ct. App. 2015), *trans. denied*. "An abuse of discretion occurs when the trial court's decision is clearly against the logic, facts, and circumstances presented. We do not reweigh evidence." *Id*. (citations omitted).

[19] The Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana Constitution grant a defendant in a criminal proceeding the right to be present at all stages of his trial. *Id*. However, that right may be waived if it is done so knowingly and voluntarily. "[S]ignificantly contemptuous conduct by a defendant can function as a knowing and voluntary waiver of [his] right to be present" at any stage of his trial. *Id*. As we stated in *Campbell v. State*, 732 N.E.2d 197, 204 (Ind. Ct. App. 2000) (quoting *Illinois v. Allen*, 397 U.S. 337, 343 (1970)):

> [A] defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on

conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.

[20] In the instant case, the trial judge was extremely patient with Lucero and provided him with multiple opportunities to cease his interruptions of the proceedings and remain in the courtroom. Moreover, the trial court gave Lucero two clear warnings that he would be removed and the sentencing hearing would be held without him if he did not cease his interruptions. Tr. at 365, 380. Yet, Lucero chose to continue to interrupt both the court and the lawyers and disrupt the proceedings by shouting out sometimes profane statements. Lucero's disruptive actions amounted to a waiver of his Sixth Amendment and Article 1, Section 13 rights. *Campbell*, 732 N.E.2d at 205. The trial court was well within its discretion when it finally excluded Lucero from the remainder of his sentencing hearing.

### Issue Two:  Habitual Offender Status

[21] Lucero claims his admission to being a habitual offender[1] was a guilty plea, not a stipulation, and that it was not given knowingly or voluntarily. After the pronouncement of the jury's verdicts, the trial court engaged in the following exchange with Lucero, outside of the jury's presence, regarding the habitual offender charge:

---

[1] A "habitual offender" has at least two prior unrelated felony convictions such that his sentence can be enhanced.  Ind. Code § 35-50-2-8 (2014).

THE COURT: You may be seated. All right. Mr. Vazanellis, you indicated that you discussed with your client the second phase and *your client has indicated to you that he would like to stipulate to the habitual offender enhancement*; is that correct?

MR. VAZANELLIS: *Yes*, your Honor.

THE COURT: All right. Mr. Lucero, I want to address you on this, because you have some rights and they're your rights and your rights alone. Okay. You have the right to have a jury trial on the habitual offender enhancement. And at that trial all of the same rights would pertain that pertained to the first half of this trial. You have the right to confront the witnesses, to cross-examine them; to testify, if you chose to do so.

MR. LUCERO: I'm not worried about none of that. It doesn't matter.

THE COURT: You're not worried about any—

MR. LUCERO: No.

THE COURT: Okay. *So you're willing to waive your right to a jury trial?*

MR. LUCERO: I'll waive my death. *I waive everything.* It's done.

THE COURT: All right. All right. I'll show, then, that the defendant has, in fact, waived his right to a jury trial on the habitual offender enhancement. Then let me ask you, Mr. Lucero, *are you admitting to the fact that you do have . . . two prior unrelated felony convictions*?

MR. LUCERO:  I got a million of them.

THE COURT:  Okay.  *So you are admitting that*?

MR. LUCERO:  It's done.

THE COURT:  I need a yes or a no from you.

MR. LUCERO:  *Yes*, it's fine.

THE COURT:  Thank you.  All right.  I'll show, then, that you have made that admission. . . .

Tr. at 328-30 (emphasis added).

[22]     The trial court then listed and discussed two of Lucero's prior felony convictions as follows:

THE COURT:  The count that they're talking about here is the amended information habitual count.  It indicates that on February 21st of 1991, that you were – that you committed the offense of burglary as a C felony.  And on or about October 4th you were sentenced to a term of two years in the Department of Correction for that conviction, which was suspended and served on probation, six months to be served on home detention.

Thereafter, after that sentence – specifically[,] on or about November 1st of 1991, it is alleged that you committed the offense of criminal recklessness as a C felony.  That was in 45G01-9111-CF-244.  It's alleged that[,] on June 10th of 1993, that [sic] you were convicted by way of plea agreement to criminal recklessness as a Class C felony.  And on June 10th of

1993[,] you were sentenced to a term of three years on the Department of Correction.

* * *

Would you admit those convictions for me, Mr. Lucero?

MR. LUCERO:  When I was a juvenile or young, yeah.

THE COURT:  When you were young, yes.

* * *

Okay.  I'm gonna accept, then, the stipulation or the admission to the habitual offender and the waiver of a jury trial on that – on that enhancement.

*Id*. at 332-33.

[23]  A defendant, personally or through his attorney, may stipulate that he has two prior unrelated felony convictions but that stipulation does not, by itself, equal an admission that he is a habitual offender for sentencing purposes.  *See Garrett v. State*, 737 N.E.2d 388, 392 (Ind. 2000).  However, if the defendant, personally or through his attorney, goes beyond merely stipulating to the underlying convictions and also expressly admits to the habitual offender enhancement, such an admission is the functional equivalent of a guilty plea.  *See Vanzandt v.*

*State*, 730 N.E.2d 721, 726 (Ind. Ct. App. 2000).[2]  And a defendant may challenge a guilty plea only in a petition for post-conviction relief, not on direct appeal.  *Tumulty v. State*, 666 N.E.2d 394, 396 (Ind. 1996).

[24]  Here, Lucero's admission was a guilty plea, not a stipulation.  Lucero admitted that he had at least two prior unrelated felony convictions, which the court described to him, and that admission provided the factual basis for his guilty plea to the habitual offender charge.  *See, e.g.*, *Daugherty v. State*, 547 N.E.2d 1116, 1117 (Ind. Ct. App. 1989) (citing *Frazier v. State*, 490 N.E.2d 315, 316 (Ind. 1986) (holding a sufficient factual basis existed for defendant's guilty plea to habitual offender charge, where defendant admitted facts in information charging him as habitual offender).  However, Lucero went further and, through his attorney, expressly "stipulate[d] to the habitual offender enhancement," and personally agreed to waive his right to a jury trial, along with other fundamental rights, on the habitual offender charge.[3]  Tr. at 329.  In light of Lucero's express admissions and waivers, the trial court ended the habitual offender phase of Lucero's trial.  The lawyers ceased all argument on

---

[2]  When a defendant pleads guilty to being a habitual offender, the trial court must advise the defendant of his right against self-incrimination, the right to trial by jury, and the right to confront accusers before accepting a guilty plea.  *Dewitt v. State*, 755 N.E.2d 167, 171 (Ind. 2001) (citing *Boykin v. Alabama*, 395 U.S. 238 (1969)).  Lucero makes no claim that the trial court failed to advise him of those rights.

[3]  Thus, Lucero clearly made a personal waiver of his right against self-incrimination, right to a trial by jury, and right to confront accusers.  *Horton v. State*, 51 N.E.3d 1154, 1159 (Ind. 2016) (holding the defendant must personally waive his right to a jury trial on a habitual-offender charge.)

the issue, the issue was never put to the jury, and the trial court proceeded directly to sentencing.

[25]     The same scenario led our supreme court to conclude in *Tumulty* that the defendant had pleaded guilty to a habitual offender enhancement.[4]  666 N.E.2d at 395-96.  Similarly, in *Vanzandt*, we held that the defendant had entered a guilty plea where he admitted not just to the underlying convictions but also to the enhancement itself, which resulted in the trial court dismissing the jury.  730 N.E.2d at 726; *cf. Garrett*, 737 N.E.2d at 392 (holding that the defendant did not plead guilty to being an habitual offender where (1) he only admitted to the existence of prior offenses, but did not admit the offenses were unrelated, (2) the lawyers subsequently presented arguments on the habitual offender charge, and (3) the habitual offender charge was submitted to the jury).

[26]     Because Lucero's admission to the habitual offender enhancement was a guilty plea, he cannot challenge his plea or the enhancement on direct appeal. *Tumulty*, 666 N.E.2d at 396.  Therefore, we affirm Lucero's conviction.  *See Stringer v. State*, 899 N.E.2d 748, 750 (Ind. Ct. App. 2009).

### Issue Three:  Inappropriateness of Sentence

[27]     Lucero also contends that his sentence is inappropriate in light of the nature of the offenses and his character.  Article 7, Sections 4 and 6 of the Indiana

---

[4] The State cites *Hopkins v. State*, 889 N.E.2d 314, 317 (Ind. 2008), for authority that Lucero had stipulated to the habitual offender enhancement, but *Hopkins* is not controlling here because it was decided under the post-conviction relief standard of review.

Constitution "authorize[] independent appellate review and revision of a sentence imposed by the trial court." *Roush v. State*, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). *Id*. Revision of a sentence under Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character. *See* Ind. Appellate Rule 7(B); *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." *Roush*, 875 N.E.2d at 812 (alteration original).

[28] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222, 1224 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id*. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id*. at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008).

Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[29] Lucero's offenses were child molesting, as a Level 4 felony, and performing sexual conduct in the presence of a minor, as a Level 6 felony. These are, by their very nature, serious and depraved crimes—but even more so in this case where the sexual abuse was directed toward Lucero's own minor daughter who trusted and relied upon him as her sole parental guardian. Moreover, as the trial court correctly found, Lucero exhibited poor character by abusing his position of trust as the young victim's father and by behaving in a dishonest and manipulative manner with her, as shown, among other things, by his repeated violations of the no-contact order. All of this, in addition to Lucero's criminal history, *see, e.g.*, *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied*, reflect poorly on his character.

[30] Lucero appears to assert that his sentence should be revised because he did not commit more serious crimes. Appellant's Br. at 25. However, our Rule 7(B) analysis does not focus on comparisons to the sentences for other types of crimes.[5] *See, e.g.*, *Anglin v. State*, 787 N.E.2d 1012, 1019 (Ind. Ct. App. 2003),

---

[5] Moreover, we note that the trial court did not even impose the maximum sentence on Lucero; had it done so, his sentence would have been thirty-four years of incarceration. I.C. § 35-50-2-5.5 (sentencing range for

*trans. denied*.  Rather, we focus less upon comparing the facts of a case to others, whether real or hypothetical, and more upon the nature, extent, and depravity of the offense for which the defendant is being sentenced and what it reveals about his character.  *Id*.; *see also Brown v. State*, 760 N.E.2d 243, 248 (Ind. Ct. App. 2002) ("Although one can imagine facts that might be worse than those before us here, such does not lessen the severity of [defendant's] conduct or bolster the quality of his character by comparison."), *trans. denied*.

[31]  Lucero's sentence is not inappropriate given the nature of the offenses and his character.

[32]  Affirmed.

Vaidik, C.J., and Baker, J., concur.

---

Level 4 felony); I.C. § 35-50-2-7 (sentencing range for Level 6 felony); I.C. § 35-50-2-8 (sentencing range for the habitual offender enhancement).  Instead, the court sentenced Lucero to an aggregate term of twenty-six years.