## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 17 2017, 9:53 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Randy M. Fisher
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Andrew B. Nichols,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 17, 2017<br><br>Court of Appeals Case No.<br>02A05-1611-CR-2756<br><br>Appeal from the Allen Superior Court<br><br>The Honorable John F. Surbeck, Jr., Judge<br><br>Trial Court Cause No.<br>02D06-1507-F3-44 |

**Najam, Judge.**

## Statement of the Case

Andrew B. Nichols appeals his sentence for attempted robbery, as a Level 3 felony, and battery, as a Level 5 felony, following a jury trial. He raises two issues for our review, namely:

1. Whether the trial court abused its discretion in sentencing him.

2. Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

## Facts and Procedural History

On July 21, 2015, Christy Wroblewski ("Wroblewski") stopped at Ricker's gas station for her morning coffee. When she went into Ricker's, Wroblewski left her car unattended and unlocked. As Wroblewski came back outside and walked toward her car, she saw Nichols exit the rear driver's side door of her car and run across the parking lot with her purse. Wroblewski yelled at Nichols to stop and she began to chase him.

As Nichols ran away, he dropped the purse and stopped to pick up the contents. Wroblewski caught up with him and grabbed for her purse. Wroblewski was able to grab one handle of her purse and Nichols held onto the other. The two began to struggle over the purse. Wroblewski yelled for help from the bystanders who had gathered around, but Nichols shoved his fingers into her mouth. Wroblewski bit Nichols' fingers and Nichols pulled his fingers out of

her mouth and produced what appeared to be a gun, but was later found to be a pellet gun. Nichols pointed the gun at Wroblewski's face and told her to stop or he would shoot her. Wroblewski grabbed the barrel of the pellet gun and pushed it away from her. As Nichols pulled the barrel out of Wroblewski's hand, the pellet gun cut her hand and fell apart. When the gun started to fall apart Wroblewski believed it was a toy gun. As Wroblewski and Nichols struggled, Nichols used the pellet gun to hit Wroblewski in the temple, face, and back of the head. As a result, Wroblewski suffered redness, pain, and hematomas to her forehead and back of her head.

[5] Nichols eventually grabbed the purse away from Wroblewski and threw it behind her into the parking lot. Nichols told Wroblewski to go get the purse. Wroblewski retrieved her purse while Nichols continued to point the gun at her and yelled at her to leave. Both parties then got into their cars and drove away. Nothing was missing from Wroblewski's purse, and Nichols never fired the pellet gun. Bystanders saw Nichols drive away in a gold colored Cadillac and provided police with a license plate number.

[6] Sergeant Mark Walters ("Walters") from the Fort Wayne Police Department heard the dispatch of an armed robbery in progress with a description of Nichols' vehicle, and he decided to watch for it from a nearby parking lot. Walters saw the vehicle drive by and he followed it until more units could assist him in stopping Nichols. When officers initiated a traffic stop, Walters observed a black handgun thrown out of the passenger side window. Nichols continued to drive approximately twenty more feet before coming to a stop

where he was arrested. Walters recovered the gun from the sidewalk where Nichols had thrown it. The pellet gun was a phantom CO-2 gun made of metal that was heavy enough to replicate the feel of a real gun. The grip and the CO-2 tank of the gun were recovered in the area where Nichols and Wroblewski had struggled.

[7] The State charged Nichols with attempted robbery, as a Level 3 felony, and battery, as a Level 5 felony. Following a trial, a jury found Nichols guilty as charged. Following a sentencing hearing, the trial court imposed a fourteen-year sentence with two years suspended to probation on the attempted robbery conviction and a concurrent three-year sentence on the battery conviction. The trial court rejected Nichols' claim that his acceptance of responsibility was a mitigating circumstance. The court found that the nature of the offense was significant and that Nichols' criminal history was an aggravating factor. This appeal ensued.

## Discussion and Decision

### *Issue One: Abuse of Discretion in Sentencing*

[8] Nichols challenges his sentence. Sentencing decisions lie within the sound discretion of the trial court. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Gross v. State*, 22

N.E.3d 863, 869 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*. A trial court abuses its discretion in sentencing if it does any of the following:

> (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any[1]—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law."

*Id*. (quoting *Anglemyer v. State*, 868 N.E.2d 482, 490-491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007)). However, the relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion, *id*., and a trial court is under no obligation to explain why a proposed mitigator does not exist or why the court gave it insignificant weight, *Sandleben v. State*, 22 N.E.3d 782, 796 (Ind. Ct. App. 2014), *trans. denied*.

[9] Nichols first contends that the trial court abused its discretion by failing to find that the significant length of time since his last criminal conduct was a mitigating factor. The trial court acknowledged that most of Nichols' criminal

---

[1] We note that, under the advisory sentencing scheme that replaced the presumptive sentencing scheme in 2005, the trial court "no longer has an obligation to weigh aggravating and mitigating factors against each other when imposing a sentence." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007). However, neither is the trial court prohibited from identifying facts in aggravation or mitigation. *Id*. And, if the trial court does find the existence of such factors, "then the trial court is required to give 'a statement of the court's reasons for selecting the sentence that it imposes.'" *Id*. (quoting Ind. Code § 35-38-1-3 (2006)).

history was old, but noted that he had committed the crimes of operating while intoxicated, possession of paraphernalia, and possession of a controlled substance just two months prior to the instant offense and was out on bond for those offenses when he committed the attempted robbery and battery in this case. Thus, while there was a gap in Nichols' commission of offenses, he had begun criminal activity again even before the instant offense. The trial court's refusal to give weight to the temporary lapse in Nichols' criminal activity was well within the court's discretion. *Goss*, 22 N.E.3d at 869.

[10] Nichols next asserts that the trial court abused its discretion by failing to find as a mitigating factor that he had accepted responsibility for his crimes. The trial court rejected Nichols' claim because, in fact, Nichols denied responsibility for the crimes with which he was charged. Instead, Nichols only took responsibility for the lesser offense of theft. Moreover, Nichols sought to minimize his actions by claiming he had thought he was taking a purse from someone who had previously stolen from him and he had "panicked and didn't know what to do" when he realized the victim was not who he had believed her to be. Sen. Tr. Vol. I at 20. And Nichols did not take responsibility for pulling a gun on Wroblewski and repeatedly hitting her with it. Thus, the trial court found that Nichols had not truly accepted responsibility for his actions. Again, the trial court was well within its discretion to reach such a conclusion. *See Anglemyer*, 875 N.E.2d at 221 (finding the defendant's statement of remorse while simultaneously minimizing his culpability was not a significant mitigating circumstance).

## Issue Two: Inappropriateness of Sentence

### Waiver

[11] Nichols also contends that his sentence is inappropriate in light of the nature of the offenses and his character. However, he presents no authority or argument on the nature of his offense. Instead, he focuses solely on his character. Accordingly, he has waived appellate review of his sentence. As we recently explained in *Sanders v.* State, 71 N.E.3d 839, 843-44 (Ind. Ct. App. 2017), *trans. denied*:

> Article 7, Sections 4 and 6 of the Indiana Constitution "authorize[] independent appellate review and revision of a sentence imposed by the trial court." *Roush v. State*, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). *Id*. Revision of a sentence under Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offenses *and* his character. Ind. Appellate Rule 7(B) (emphasis added). That language is clear: Rule 7(B) plainly requires, as this court has long acknowledged, "the appellant to demonstrate that his sentence is inappropriate in light of *both* the nature of the offenses and his character." *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008) (emphasis original to *Williams*).

Because Nichols has failed to present any authority or analysis on the issue of the nature of his offenses, he has waived our review of the inappropriateness of his sentence.

### Waiver Notwithstanding

[12] Waiver notwithstanding, Nichols has failed to persuade us that his sentence is inappropriate. We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." *Roush*, 875 N.E.2d at 812 (alteration original).

[13] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222, 1224 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id*. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id*. at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[14] Here, aside from providing no authority or analysis concerning the nature of his offenses, Nichols has not shown that the sentence was inappropriate in light of his character. "When considering the character of the offender, one relevant fact is the defendant's criminal history," and "[t]he significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense." *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied*. Nichols' criminal history consists of seven misdemeanor convictions and one felony conviction. Nichols' past crimes include shoplifting, criminal mischief, carrying a handgun without a license, possession of a bad check/money order, Class B felony burglary, resisting law enforcement, operating a motor vehicle while intoxicated, and possession of a controlled substance. Further, several of his prior offenses are similar in nature to his crimes in the instant case—i.e., unlawful taking of property from others and carrying a weapon. Moreover, Nichols was out on bond when he committed the offense here. His criminal history reflects poorly on his character.

[15] Nichols' attempts at explaining his crime also indicate a lack of character. He claimed that he believed the victim's vehicle belonged to two individuals who had previously stolen from him, so he decided to exact revenge by stealing from those two rather than pursuing relief through lawful channels. Nichols further stated that when Wroblewski approached him and he realized his mistake, he "panicked and didn't know what to do." Sent. Tr. Vol. I at 20. Instead of ceasing his criminal activity and returning the purse to his mistaken victim,

Nichols chose to escalate the situation when he pulled out the gun he was carrying, pointed it at Wroblewski, threatened to shoot her, and then beat her repeatedly with it about her face and head. His purported resort to vigilante justice and his decision to escalate the situation with further violence reflect poorly on his character. Nichols' sentence was not inappropriate given the nature of the offenses and his character.

[16] Affirmed.

Riley, J., and Bradford, J., concur.